[No. H030167. Sixth Dist. June 26, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE L. WHALEY, Defendant and Appellant.

## Counsel

Richard E. Holly, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan, and Moona Nandi, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.—**

## I. INTRODUCTION

Defendant George L. Whaley appeals from an order of the trial court recommitting him to the Department of Mental Health for a period of two years under the Sexually Violent Predators Act (SVPA). (Welf. & Inst. Code, § 6600 et seq.)[1]

Whaley contends that the trial court erred in giving a supplemental jury instruction to the deadlocked jury that exerted undue pressure on the holdout juror, in violation of the rule established in *People v. Gainer* (1977) 19 Cal.3d 835, 850 [139 Cal.Rptr. 861, 566 P.2d 997] (*Gainer*) that the minority jurors cannot be pressured to acquiesce in the verdict. For reasons that we will explain, we disagree. However, because the commitment period at issue has expired, we will dismiss the appeal as moot after deciding the issue for the guidance of future SVPA proceedings.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Sexual Offenses*

In 1982, Whaley pleaded guilty to one count of rape and one count of forcible oral copulation. The rape occurred in July 1981, when Whaley, age 18, invited the 16-year-old victim into an apartment where he forced her to orally copulate him and submit to sexual intercourse. In December 1981, while Whaley was in custody for the rape, he committed forcible oral copulation on a fellow inmate. Whaley was sentenced to a total term of 12 years. After he was released on parole in 1987, Whaley was arrested on several charges, including forcible rape. He returned to prison on a parole violation and was again released on parole in 1991. In 1992, Whaley committed rape, assault and robbery on another female victim and was sentenced to a 13-year prison term.[2]

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] We take judicial notice of this court's opinions in Whaley's previous appeals (*People v. Whaley* (Jan. 26, 2000, H019827) [nonpub. opn.]; *People v. Whaley* (Nov. 29, 2004, H026463) [nonpub. opn.]). Some background facts have been taken from our previous opinions.

B.  *SVPA Commitment Petitions*

On March 30, 1998, the Santa Clara County District Attorney filed a petition to commit Whaley as a sexually violent predator under the SVPA. The petition alleged that Whaley had two qualifying prior convictions, based on the 1982 convictions for rape and forcible oral copulation. After a trial, the trial court determined Whaley to be a sexually violent predator and ordered him committed to the custody of the Department of Mental Health for a period of two years, beginning January 28, 1999.

Whaley's initial commitment was set to expire on January 28, 2001. The district attorney filed a petition to extend his commitment until January 28, 2003. While the second petition was pending the district attorney filed a third petition, which sought to extend Whaley's commitment for another two-year period, from January 29, 2003, to January 28, 2005. The trial court consolidated the two pending petitions for trial. On August 27, 2003, the jury found the petitions to be true and the trial court committed Whaley for two additional two-year periods, from January 28, 2001, to January 28, 2003, and from January 28, 2003, to January 28, 2005.

On December 20, 2004, the district attorney filed a petition to extend Whaley's commitment for a fourth two-year period, from January 28, 2005, to January 28, 2007. In support of the petition, the district attorney attached the recommitment evaluations of John Hupka, Ph.D. and Jack Vogensen, Ph.D.[3] On August 12, 2005, the trial court found probable cause existed to go forward with the matter. A jury trial date of April 3, 2006, was set.

C.  *Trial Testimony*

Trial testimony began on April 5, 2006, with the testimony of the People's expert witness, Jack Vogensen, Ph.D. Dr. Vogensen has a Ph.D. in psychology and performs sexually violent predator evaluations under contract to the State of California. Dr. Vogensen evaluated Whaley and determined that he suffers from two mental disorders, paraphilia (deviant sexuality) and polysubstance abuse. Additionally, Dr. Vogensen concluded that Whaley has a high risk of reoffending in a sexually violent predatory manner.

The next witness to testify was Whaley's expert, James J. Park, Ph.D. Dr. Park has a Ph.D. in psychology and experience in performing sexually

---

[3] The reports of Dr. Hupka and Dr. Vogensen were not included in the record on appeal.

violent predator evaluations. After evaluating Whaley, Dr. Park diagnosed Whaley as suffering from paraphilia in remission. Dr. Park therefore concluded that Whaley does not have a currently diagnosed mental disorder that affects his emotional or volitional capacity or predisposes him to commit criminal sex acts. Dr. Park also concluded that Whaley is not likely to reoffend.

Whaley presented a second expert witness, Robert Leon Halon, Ph.D. Dr. Halon's Ph.D. is in clinical psychology. He has been performing sexually violent predator evaluations for the Department of Mental Health since 1995. Dr. Halon evaluated Whaley and determined that he does not suffer from paraphilia. It was Dr. Halon's opinion that Whaley was disposed to commit sexually violent crimes due to his personal characteristics, rather than any mental disorder. Dr. Halon explained that Whaley's sex crimes were the result of Whaley's attitude of superiority and disregard for the consequences of his acts on the victims, which was "fueled" by chronic substance abuse.

The final witness was John Hupka, Ph.D., who testified in rebuttal for the People. Dr. Hupka has a Ph.D. in psychology and performs sexually violent predator evaluations under contract to the Department of Mental Health. Dr. Hupka evaluated Whaley and diagnosed three mental disorders: paraphilia, substance abuse, and antisocial personality disorder. In contrast to Dr. Park, Dr. Hupka testified that paraphilia does not change because a person is in custody. Dr. Hupka concluded that Whaley is at high risk to reoffend, based in part on the results of the Static-99 instrument.

D. *Supplemental Jury Instructions*

After testimony concluded on April 12, 2006, the trial court gave final jury instructions. The jurors deliberated from approximately 2:20 p.m. to 4:20 p.m. Deliberations resumed at 9:00 a.m. the next day, April 13, 2006. At 3:35 p.m., the jurors sent jury note No. 1 to the trial court, which stated, "We are currently at a stalemate and unable to reach a unanimous decision." The jurors then continued their deliberations for approximately one hour while counsel met with Judge Emerson, who was substituting for Judge Lee that day.

Thereafter, at 4:17 p.m. on April 13, 2006,[4] Judge Emerson convened the parties and all jurors and inquired as to the jurors' numerical division, as

---

[4] Whaley *points out that the reporter's transcript indicates, apparently erroneously, that* Judge Emerson instructed the jury on April 12, 2006.

follows: "Without telling me how you are divided for or against the proposition you're deliberating, can you tell me, can the foreperson tell me how you're divided numerically?" The foreperson replied, "I believe it's eleven to one." Judge Emerson asked whether there was anything the court could do to help the jurors. When the jurors did not respond with a request for assistance, Judge Emerson gave the following supplemental instruction:

"THE COURT: Well, let me do this: Judge Lee is going to be back tomorrow morning. And what I would prefer is that he make any kind of final order in this case. So I will ask that you continue your deliberations. You need to understand you're not advocates in this matter, and you are not— you're not expressing any particular view. You are impartial judges of the facts. You need to listen to each other's opinions and with a perspective of being convinced of whether that person is able to convince you to change your view. [¶] You shouldn't be tied to a certain view in this case because a majority of the jurors or any of them favors that view. So you need to make up your mind for yourself, but you should only make up your mind after you've had a thorough discussion and gone through the facts and the law with the other jurors. All right? I would be glad to give you anything that you want. [¶] If you have nothing that you wish, I just ask that you deliberate until a reasonable time this afternoon . . . and then take a recess and return tomorrow morning and see if Judge Lee wishes to give you any further comments or instructions himself."

As best as can be determined from the record on appeal, the jurors did not deliberate further on April 13, 2006. They returned the next day, April 14, 2006, for further supplemental instruction by Judge Lee.[5] At 9:35 a.m. Judge Lee gave a supplemental instruction taken from the decision in *People v. Moore* (2002) 96 Cal.App.4th 1105 [117 Cal.Rptr.2d 715] (*Moore*) that both parties had agreed "would be the appropriate way to proceed." Judge Lee stated that "it specifically is an instruction that can give [the jurors] additional guidance on how to conduct further deliberations." The instruction was given as follows:

"THE COURT: I've been advised by Counsel and Judge Emerson, and of course I've looked at the note that you sent out yesterday indicating that at the point you sent the note, at least, you were not unanimous.

"So I have an additional jury instruction I'd like to read you at this time, if you would listen carefully.

---

[5] Whaley also points out that the reporter's transcript indicates, apparently erroneously, that Judge Lee instructed the jury on April 13, 2006.

"It has been my experience on more than one occasion that a jury which initially reported that it was unable to reach a verdict was ultimately able to arrive at a verdict. To assist you in your further deliberations, I'm going to further instruct you as follows: Your goal as jurors should be to reach a fair and impartial verdict, if you are able to do so based solely on the evidence presented and without regard for the consequences of your verdict regardless of how long it takes to do so.

"It is your duty as jurors to carefully consider, weigh and evaluate all of the evidence presented at the trial, to discuss your views regarding the evidence, and to listen and consider the views of your fellow jurors. In the course of your further deliberations, you should not hesitate to re-examine your own views or to request your fellow jurors to re-examine theirs.

"You should not hesitate to change a view you once held if you are convinced it is wrong or to suggest other jurors change their views if you are convinced they are wrong.

"Fair and effective jury deliberations require a frank and forthright exchange of views. As I previously instructed you, each of you must decide the case for yourself, and you should do so only after a full and complete consideration of all of the evidence with your fellow jurors. It is your duty as jurors to deliberate with the goal of arriving at a verdict, if you can do so without violence to your individual judgment.

"Both the People and [Whaley] are entitled to the individual judgment of each juror. As I previously instructed you, you have the absolute discretion to conduct your deliberations in any way you deem appropriate. May I suggest that since you've been unable to arrive at a verdict using the methods that you have chosen, that you consider to change the methods you have been following, at least temporarily and try new methods.

"For example? You may wish to consider having different jurors lead the discussions for a period of time. You may wish to experiment with reverse role-playing by having those on one side of the issue present and argue the other side's positions and vice versa. This might enable you to better understand the other's positions.

"By suggesting you should consider changes in your methods of deliberations, I want to stress that I am not dictating or instructing you as to how to

conduct your deliberations. I merely find that you may find it productive to make sure each juror has a full and fair opportunity to express his or her views and consider and understand the views of the other jurors.

"I also suggest you reread instruction 200 on Page 1 and instruction 3550 on Page 6.[6] These instructions pertain to your duties as jurors and make recommendations as how you should deliberate. The integrity of a trial

---

[6] The record on appeal lacks a reporter's transcript of jury instruction No. 200 as given. The copy of Judicial Council of California Criminal Jury Instructions (2006), CALCRIM No. 200 contained in the clerk's transcript states, "Members of the jury, I will now instruct you on the law that applies to this case. Each of you has a copy of these instructions to use in the jury room. [¶] You must reach your verdict without any consideration of the consequences. [¶] You must follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions. [¶] Pay careful attention to all of these instructions and consider them together. If I repeat any instruction or idea, do not conclude that it is more important than any other instruction or idea just because I repeated it. [¶] Some words or phrases used during this trial have legal meanings that are different from their meanings in everyday use. These words and phrases will be specifically defined in these instructions. Please be sure to listen carefully and follow the definitions that I give you. Words and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings. [¶] Some of these instructions may not apply, depending upon your findings about the facts of the case. Do not assume just because I gave a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them."

The reporter's transcript of CALCRIM No. 3550 as given reads, "Ladies and gentlemen, when you go to the jury room, the first thing you should do is choose a foreperson. The foreperson should see to it that your discussions are carried on in an organized way, and that everyone has a fair chance to be heard. It is your duty to talk with one another and to deliberate. You should try to agree on a verdict, if you can. You should each decide the case for yourself, but only after you have discussed the case with the other jurors. Do not hesitate to change your mind if you become convinced that it is wrong. But do not change your mind just because other jurors disagree with you. Keep an open mind and openly exchange your thoughts and ideas about this case. [¶] Stating your opinions too strongly at the beginning or immediately announcing how you plan to vote may interfere with an open discussion. Please treat one another courteously. Your role is to be an impartial judge of the facts, not to act as an advocate for one side or the other. Do not talk about the case or about any of the people or any subject involved in it with anyone, including, but not limited to, your spouse or other family, or friends, spiritual leaders or advisors or therapists. [¶] You must discuss the case only in the jury room when—only when all jurors are present. Do not discuss your deliberations with anyone. During the trial, several items were received into evidence as exhibits. You may examine whatever exhibits you think will help. If you need to communicate, send a note through the bailiff, signed by the foreperson. To have a complete record of this trial, it's important that you not communicate with me except by a written note. If you have questions, I will talk with the attorneys before I answer, so it may take some time. You should continue your deliberations while you wait for my answer. I will answer any questions in writing or orally here in open court. [¶] Do not reveal to me or anyone else how the vote stands on the (issues in this case) unless I ask you to do so. Your verdict must be unanimous. This means that, to return a verdict, all of you must agree to it. It is not my role to tell you what your verdict should be. Don't take anything I said or did during the trial as an indication of what I think about the facts, the witnesses, or what your verdict should be. [¶] You will be given a

requires that jurors at all times during deliberations conduct themselves as required by these instructions.

"The decision the jury renders must be based on the facts and the law. You must determine what facts have been proved from the evidence received in the trial and not from any other source. A fact is something proved by the evidence or by stipulation.

"Second, you must apply the law that I state to you to the facts as you determine them and in this way, arrive at your verdict. You must accept and follow the law as I state it to you, regardless of whether you agree with the law. If anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions.

"Instruction 3550 defines the jury's duty to deliberate. The decisions you make in this case must be based on the evidence received in the trial and the instructions given by the Court. These are the matters this instruction requires you to discuss for the purpose of reaching a verdict.

"You should keep in mind the recommendations of [sic] this instruction suggests when considering the additional instructions, comments and suggestions I have made in the instructions now presented to you. I hope my comments and suggestions may have been some assistance to you.

"You're ordered to continue your deliberations at this time. If you have other questions, concerns, requests or any communications you desire to report to me, please put those in writing on the form my bailiff will provide you. Have them signed and dated by your foreperson or one or more of the other jurors, and then notify the deputy."

After being further instructed on April 14, 2006, the jurors continued their deliberations. At a time not stated in the record, the jurors submitted jury note No. 2, which had handwritten notes indicating a date of April 14, 2006, and a time of 9:50 a.m. Jury note no. 2 requested readback of the testimony regarding the "definition in DSM-IV of [paraphilia]," "[paraphilia] being a c[h]ronic, lifelong mental disorder," "Dr. Park's testimony on the [paraphilia] disorder being in remission and the DA's cross exam as to the remission being valid," as well as "Dr. Park's testimony that Mr. Whaley has/had [paraphilia] disorder."

---

verdict form. As soon as all jurors have agreed on a verdict, the foreperson must date and sign the appropriate verdict form and notify the deputy. Return any unsigned verdict forms."

While the trial court and counsel met to determine the appropriate response to jury note No. 2, the jurors continued to deliberate. At 11:25 a.m., after the jurors had been deliberating for approximately one hour, the trial court was notified that the jury had reached a verdict. The record also reflects that jury note No. 2 was withdrawn at that time.

### E. *Jury Verdict*

On April 14, 2006, the jurors found true the petition alleging that Whaley is a sexually violent predator within the meaning of section 6600. When the jurors were polled at Whaley's request, all jurors responded affirmatively to the question, "Is this your verdict?"

On April 17, 2006, the trial court entered its order committing Whaley to the Department of Mental Health for a two-year period ending January 28, 2007.

Thereafter, Whaley filed a timely notice of appeal.

## III. DISCUSSION

### A. *The Parties' Contentions*

On appeal, Whaley argues that the trial court abused its discretion by giving a supplemental jury instruction that suggested to the jurors "[y]ou may wish to experiment with reverse role-playing by having those on one side of the issue present and argue the other side's positions and vice versa." Whaley asserts that this suggestion placed undue pressure on the holdout juror in violation of the rule established in *Gainer, supra,* 19 Cal.3d at pages 848–849, that the minority jurors cannot be instructed to "rethink their position in light of the majority's views." Additionally, Whaley contends that the supplemental instruction violated his federal due process right to an impartial jury by "tending to coerce the hold out juror to relinquish his or her opinion in favor of the majority view."

The People respond that the appeal should be dismissed as moot because the two-year commitment at issue expired on January 28, 2007. Alternatively, they contend that Whaley's claim of instructional error was either waived or constitutes invited error because he not only failed to object to the supplemental instruction but expressly agreed to it. The People also argue that the

trial court did not err in giving the supplemental instruction because the court merely made a suggestion regarding further deliberations and did not signal that the holdout juror should succumb to the majority view.

### B.   *Threshold Issues*

We first consider the People's contention that the appeal should be dismissed as moot due to the expiration of the two-year commitment period on January 28, 2007. Whaley asserts that this court may decide a moot appeal where, as here, the appeal involves an issue of public interest that is likely to recur while evading appellate review. We agree.

Where a commitment under the SVPA has expired, the appellate court may retain the appeal for decision where the issue is likely to recur and the "two-year limit on each commitment makes it likely that any appeal raising the issue would become moot before we could decide it. [Citations.]" (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1186 [124 Cal.Rptr.2d 186, 52 P.3d 116].) The appellate court also has the discretion to decide the issue for the guidance of future proceedings before dismissing the case as moot. (*People v. Cheek* (2001) 25 Cal.4th 894, 897–898 [108 Cal.Rptr.2d 181, 24 P.3d 1204].)

Because the issue of the appropriate supplemental jury instruction to give a deadlocked jury in a proceeding under the SVPA is likely to recur, we will exercise our discretion to decide the issue for the guidance of future proceedings before dismissing Whaley's appeal as moot.

We need not reach the People's alternative contention that Whaley's claim of instructional error is barred on the grounds of waiver and invited error because, for the reasons discussed below, we will reject Whaley's claim of instructional error on the merits.

### C.   *Supplemental Jury Instructions*

The trial court's authority to give supplemental jury instructions to a deadlocked jury in a criminal case derives from Penal Code section 1140, which provides, "Except as provided by law, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties, entered upon the minutes, or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree."

■ The trial court is therefore required to determine in its "sound discretion" whether there is a reasonable probability of agreement by the jury. (*People v. Miller* (1990) 50 Cal.3d 954, 994 [269 Cal.Rptr. 492, 790 P.2d 1289].) However, "[t]he court must exercise its power . . . without coercion of the jury, so as to avoid displacing the jury's independent judgment 'in favor of considerations of compromise and expediency.' [Citation.]" (*Ibid.*; see *People v. Carter* (1968) 68 Cal.2d 810, 817 [69 Cal.Rptr. 297, 442 P.2d 353].)

Directing further deliberations is proper where the trial court reasonably concludes that "such direction would be perceived ' "as a means of enabling the jurors to enhance their understanding of the case rather than as mere pressure to reach a verdict on the basis of matters already discussed and considered." [Citation.]' [Citation]." (*People v. Proctor* (1992) 4 Cal.4th 499, 539 [15 Cal.Rptr.2d 340, 842 P.2d 1100].) The supplemental instructions that may be given for the purpose of directing further deliberations are governed by the "judicially declared rule of criminal procedure" established by the California Supreme Court in its landmark decision *Gainer, supra,* 19 Cal.3d at page 852.

In *Gainer,* our Supreme Court addressed the instruction commonly called the " '*Allen* charge' " or the " 'dynamite charge,' " which was approved by the United States Supreme Court in *Allen v. United States* (1896) 164 U.S. 492 [41 L.Ed. 528, 17 S.Ct. 154] (*Allen*)[7] and subsequently adopted in many states.[8] (*Gainer, supra,* 19 Cal.3d at pp. 842–844.) The California Supreme Court found that the "first and most questionable feature" of the *Allen* charge was "the discriminatory admonition directed to minority jurors to rethink their position in light of the majority's views." (*Id.* at p. 845.) As paraphrased in part by the United States Supreme Court, the admonition stated, "a

---

[7] The instructions at issue in *Allen* were paraphrased as follows by the *Allen* court: "These instructions were quite lengthy, and were, in substance, that in a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority." (*Allen, supra,* 164 U.S. at p. 501.)

[8] The *Gainer* court observed, "Undoubtedly the popularity of the instruction stemmed from its perceived efficiency as a means of 'blasting' a verdict out of a deadlocked jury in a manner which had the imprimatur of the highest court in the land." (*Gainer, supra,* 19 Cal.3d at p. 844.)

dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself." (*Allen, supra,* 164 U.S. at p. 501.)

The *Gainer* court disapproved the *Allen* charge because the instruction violated the defendant's right to a jury decision based upon the evidence and arguments presented at trial. (*Gainer, supra,* 19 Cal.3d at p. 848.) As the California Supreme Court later reiterated, the "principal flaw in the *Allen* charge at issue in *Gainer* was that, by counseling minority jurors to consider the majority view, whatever it might be, the instruction encouraged jurors to abandon a focus on the evidence as the basis of their verdict." (*People v. Rodriguez* (1986) 42 Cal.3d 730, 768–769 [230 Cal.Rptr. 667, 726 P.2d 113].) Additionally, the court determined that the defendant's right under the California Constitution (Cal. Const., art. I, § 16) to a unanimous verdict of a jury of 12 persons was violated by the *Allen* charge, because it encouraged the minority jurors to acquiesce in the verdict reached by the majority without exercising their independent judgment. (*Gainer, supra,* 19 Cal.3d at pp. 848–849.)

■ In disapproving the *Allen* charge, our Supreme Court ruled that "it is error for a trial court to give an instruction which either (1) encourages jurors to consider the numerical division or preponderance of opinion of the jury in forming or reexamining their views on the issues before them; or (2) states or implies that if the jury fails to agree the case will necessarily be retried. We adopt the foregoing as a judicially declared rule of criminal procedure." (*Gainer, supra,* 19 Cal.3d at p. 852, fn. omitted.)

Having reviewed the *Gainer* rule governing supplemental jury instructions, we turn to Whaley's claim of instructional error.

D. *Instructional Error*

In the present case, the parties agreed that the trial court would instruct the deadlocked jury with a supplemental instruction taken from the decision in *Moore, supra,* 96 Cal.App.4th at pages 1118–1119. Whaley now complains that the instruction violated the *Gainer* rule regarding supplemental jury instructions because it included the following language: "May I suggest that since you've been unable to arrive at a verdict using the methods that you have chosen, that you consider to change the methods you have been following, at least temporarily and try new methods. [¶] For example? You may wish to consider having different jurors lead the discussions for a period of time. You may wish to experiment with reverse role-playing by having those on one side of the issue present and argue the other side's positions and vice versa. This might enable you to better understand the other's positions."

In *Moore*, the appellate court determined that a supplemental instruction that included the above language did not constitute an improper *Allen* charge. (*Moore, supra*, 96 Cal.App.4th at p. 1121.) The court found that nothing in the supplemental instruction improperly directed the jury that it was required to reach a verdict, placed any constraints on an individual juror's responsibility to weigh and consider the evidence, or coerced the jurors into abdicating their independent judgment in favor of compromise and expediency. (*Id.* at p. 1121.)

Whaley contends that *Moore* was wrongly decided and should not be followed. According to Whaley, the trial court's suggestion that the jurors try role playing as a new method of deliberation placed undue pressure on the holdout juror to change his or her opinion. He insists that a holdout juror who anticipated the "ordeal" of having to act out a one-sided "charade" for 11 majority jurors would feel "stage fright" and consequently succumb to the "majority's will." Whaley also emphasizes the *Gainer* court's approval of CALJIC No. 17.40[9] as a supplemental instruction to a deadlocked jury and asserts that any departure from CALJIC No. 17.40 is unwarranted.

■ At the outset, we address the question of whether the judicially created rule of criminal procedure established in *Gainer* applies in an SVPA proceeding, which is a special proceeding of a civil nature, not a criminal action. (*People v. Yartz* (2005) 37 Cal.4th 529, 536 [36 Cal.Rptr.3d 328, 123 P.3d 604]; *People v. Superior Court (Cheek)* (2001) 94 Cal.App.4th 980, 988 [114 Cal.Rptr.2d 760].) However, it has been recognized that the procedures established by the SVPA "have many of the trappings of a criminal proceeding," including the requirements that "the trier of fact must find the defendant to be a sexually violent predator *beyond a reasonable doubt* (§ 6604), and a jury verdict must be *unanimous* (§ 6603, subd. (d))." (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1192 [124 Cal.Rptr.2d 186, 52 P.3d 116].) Because the burden of proof and the requirement of juror unanimity are the same in a criminal trial and a trial under the SVPA, we determine that the *Gainer* rule pertaining to the supplemental jury instruction of a deadlocked jury in a criminal case should also govern the supplemental instructions that may be given to a deadlocked jury in an SVPA trial.

For several reasons, we also determine that the supplemental instruction given in the present case, which suggested that the jurors utilize "reverse role

---

[9] CALJIC No. 17.40 states, "The People and the defendant are entitled to the individual opinion of each juror. [¶] Each of you must consider the evidence for the purpose of reaching a verdict if you can do so. Each of you must decide the case for yourself, but should do so only after discussing the evidence and instructions with the other jurors. [¶] Do not hesitate to change an opinion if you are convinced it is wrong. However, do not decide any question in a particular way because a majority of the jurors, or any of them, favor that decision. [¶] Do not decide any issue in this case by the flip of a coin, or by any other chance determination."

playing" as a method of deliberation, did not violate the *Gainer* rule. First, the trial court's suggestion that the jurors consider a role playing method of deliberation applied to both the minority and majority jurors, unlike an improper *Allen* charge that asks only the minority jurors to reconsider their positions. (See *Gainer, supra,* 19 Cal.3d at p. 852.)

Second, there was nothing in the supplemental instruction that was designed to coerce a verdict or unduly increased " 'the inevitable pressure to agree felt by minority jurors.' [Citation]." (*Gainer, supra,* 19 Cal.3d at p. 850.) To the contrary, the trial court emphasized the jurors' duty to use their independent judgment by urging the jurors to "decide the case for yourself . . . only after a full and complete consideration of all of the evidence with your fellow jurors. It is your duty as jurors to deliberate with the goal of arriving at a verdict, if you can do so without violence to your individual judgment."

Third, the trial court did not order the jurors to utilize role playing as a method of deliberation. The court made clear in the supplemental instruction that it was merely suggesting that the jurors consider role playing as one of several possible methods of deliberation: "By suggesting you should consider changes in your methods of deliberations, I want to stress that I am not dictating or instructing you as to how to conduct your deliberations. I merely find that you may find it productive to make sure each juror has a full and fair opportunity to express his or her views and consider and understand the views of the other jurors."

Finally, we observe that the United States Supreme Court has stated that where, as here, defense counsel does not object to a supplemental instruction, "such an omission indicates that the potential for coercion argued now was not apparent to one on the spot." (*Lowenfield v. Phelps* (1988) 484 U.S. 231, 240 [98 L.Ed.2d 568, 108 S.Ct. 546].)

Thus, we find that the trial court's suggestion that the deadlocked jurors consider reverse role playing as a method of deliberation did not constitute an improper *Allen* charge. The role-playing suggestion was directed to both minority and majority jurors and, when considered in the context of the entire supplemental instruction, did not encourage the jurors to abandon a focus on the evidence as the basis of their verdict. (*People v. Rodriguez, supra,* 42 Cal.3d at p. 769.) Nor did the supplemental instruction encourage the minority jurors to acquiesce in the verdict without exercising their independent judgment. (*Gainer, supra,* 19 Cal.3d at pp. 848–849.)

Whaley's reliance on a federal decision, *Jiminez v. Myers* (9th Cir. 1993) 40 F.3d 976 (*Jiminez*), for a contrary result, and also as support for his

argument that the supplemental instruction violated his federal due process right, is misplaced. As a state court, "we are not bound by decisions of the lower federal courts, even on federal questions." (*People v. Crittenden* (1994) 9 Cal.4th 83, 120, fn. 3 [36 Cal.Rptr.2d 474, 885 P.2d 887].)

Even assuming that the decision in *Jiminez, supra,* 40 F.3d 976 is persuasive, the decision does not aid Whaley because it is factually distinguishable. After nearly five hours of deliberations, the *Jiminez* jury sent the court a note stating that it was unable to reach a verdict. The court inquired as to the number of votes taken and the results of the most recent vote. The foreperson responded that five or six votes had been taken and the most recent vote had a numerical division of nine to three. The judge then inquired as to whether there had been movement, and the foreperson said there had been movement in one direction. After a three-day weekend, the jury returned to its deliberations. Three hours later, the jury sent a note advising the court that it was at an impasse. Both counsel agreed that the jury was hung and the case should be set for retrial. However, the court inquired of the jury as to the numerical division and, upon learning that it was eleven to one, instructed the jurors to continue deliberating for the rest of the day. (*Jiminez, supra,* 40 F.3d at pp. 978–979.)

The federal appellate court in *Jiminez* determined that the trial court had given a "de facto *Allen* charge," explaining that "[i]n view of the disclosure after the second impasse that only one juror remained in the minority and the trial court's implicit approval of the 'movement' toward unanimity, the court's instruction to continue deliberating until the end of the day sent a clear message that the jurors in the majority were to hold their position and persuade the single hold-out juror to join in a unanimous verdict, and the hold-out juror was to cooperate in the movement toward unanimity." (*Jiminez, supra,* 40 F.3d at p. 981.)

In the present case, the supplemental instruction given by the trial court did not implicitly approve a movement towards unanimity or otherwise send a message that the holdout juror was to cooperate with the majority. As we have discussed, while the trial court urged the jurors to continue deliberating, the court also emphasized that the jurors should arrive at a verdict only if they could do so without violence to their individual judgment. Thus, the supplemental instruction given here did not constitute a de facto *Allen* charge.

■ For these reasons, we conclude that under the circumstances of this case, the trial court did not err in giving a supplemental instruction based on the instruction approved in *Moore, supra,* 96 Cal.App.4th at page 1121. However, we observe that the California Supreme Court in *Gainer* expressly

commended the use of CALJIC No. 17.40 as a supplemental instruction where appropriate. (*Gainer, supra,* 19 Cal.3d at p. 856.) Therefore, we believe that any departure from CALJIC No. 17.40 or the new pre-deliberation instruction set forth in CALCRIM No. 3550 should be carefully considered in light of *Gainer* and the circumstances of each case.

## IV.  DISPOSITION

The appeal is dismissed as moot.

Duffy, J., concurred.

**McADAMS, J.,** Concurring.—I agree with the disposition of this case, with much of the analysis and certainly with my colleagues' cautionary comments regarding departure from existing predeliberation instructions.

I write separately to dispel any impression that such agreement means that I approve of or encourage the use of the entirety of the supplemental deadlocked jury instruction given in this case and found to be commendable in *People v. Moore* (2002) 96 Cal.App.4th 1105, 1122 [117 Cal.Rptr.2d 715]. In particular, I am troubled by the statement to the jurors that they should consider using "reverse role playing" as a method of deliberation, especially in a case such as this one where the trial court was aware at the time of the instruction that the numerical breakdown of the deadlocked jury was 11 to one. Furthermore, I have concerns about language found in the early and later portions of the instruction that creates the impression that the court has the expectation that the jurors should come to a verdict, the statement shortly thereafter that they have a "goal as jurors" to reach a verdict if they are able to do so "regardless of how long it takes," and the concluding charge that the panel is "ordered to continue your deliberations." These remarks are a far cry from the restrained, neutral tone of CALCRIM No. 3550. (Judicial Council of Cal. Crim. Jury Instns. (2006) CALCRIM No. 3550.)

I disagree with the view that such statements cannot be found to be unduly coercive because they are mere "suggestions" made by the court. These comments are more than friendly and helpful advice. The trial judge is seen by the jury as the central courtroom authority figure, the unbiased source of the law and the same person who previously instructed them in CALCRIM No. 200 that "[y]ou must follow the law as I explain it to you, even if you disagree with it." Thus the need for utmost caution.

Nevertheless, I conclude that these concerns and criticisms do not rise to a level that compels reversal under the circumstances of this case.

Appellant's petition for review by the Supreme Court was denied October 10, 2007, S154180.