Filed 7/24/25  P. v. Franklin CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TEALOW FRANKLIN,<br><br>Defendant and Appellant. | C099603<br><br>(Super. Ct. No. 23FE005143) |

A jury found defendant Tealow Franklin guilty of rape, assault with a deadly weapon, criminal threats, and witness dissuasion.  It also found true an allegation that defendant used a deadly weapon during the rape.  The trial court sentenced defendant to an aggregate 22 years eight months in prison.

Defendant now contends (1) a so-called "firecracker" instruction given to the jury after it announced it was deadlocked violated his rights to a fair trial and uncoerced jury verdicts; (2) the trial court should have imposed low-term sentences based on defendant's

1

post-traumatic stress disorder (PTSD); and (3) the trial court should have stayed the count two sentence for assault with a deadly weapon under Penal Code section 654.[1]

Finding no merit in defendant's contentions, we will affirm the judgment.

BACKGROUND

Defendant's mother P.D. was 68 years old in April 2023. She had a stroke the prior year which affected her memory and the way she processed information, but it did not cause her to hallucinate. She lived alone, drove, and took care of herself.

Defendant visited P.D. at her apartment on April 7, 2023. Upon entering, defendant closed the door and the drapes. When P.D. told him not to close the drapes, he yelled, "shut up, bitch." Defendant swore at P.D. for one or two minutes, then became physically aggressive with her. He took her cell phone and punched her cheek. He kept saying "shut up, bitch" when she asked what was wrong. He hit her head with the handle of a knife, causing her to fall to the floor. He then dragged her by her hair to the bedroom, where he forced her to perform oral sex on him and then raped her. He said it was what P.D.'s ex-husband used to do. Defendant continued to hold the knife in his hand and threatened to ram the knife through her.

Afterward, defendant returned P.D.'s cell phone to her and went outside. P.D. texted her daughter and the daughter called police. A law enforcement officer responded to P.D.'s apartment at 11:40 p.m. on April 7, 2023. P.D. was alert and provided a consistent statement each time she was interviewed. Defendant was asleep on the couch. He exhibited signs of intoxication.

Defendant presented expert testimony about the effects of a stroke. Confabulation, i.e., stating something that is not true without intent to lie, can be a side effect of a stroke.

---

[1] Undesignated statutory references are to the Penal Code.

The defense expert did not review any reports in the case and did not examine P.D. or speak with her doctors. He said he was not giving an opinion about P.D.

The jury found defendant guilty of rape (§ 261, subd. (a)(2) -- count one), assault with a deadly weapon (§ 245, subd. (a)(1) -- count two), criminal threats (§ 422 -- count five), and witness dissuasion (§ 136.1, subd. (b)(1) -- count six). It found true allegations that during the commission of rape defendant used a deadly weapon within the meaning of section 12022.3, subdivision (a), and during the commission of making criminal threats and witness dissuasion, defendant used a deadly weapon within the meaning of section 12022, subdivision (b)(1). It also found true allegations that the crimes involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; that defendant committed a crime against a victim who was particularly vulnerable; and that defendant took advantage of a position of trust or confidence to commit the offenses.

The trial court imposed upper term sentences on counts one, two, and five. It sentenced defendant to an aggregate prison sentence of 22 years eight months.

Additional background is set forth in the discussion as relevant to the contentions on appeal.

## DISCUSSION

### I

Defendant challenges the supplemental "firecracker" instruction the trial court gave the jury after the jury announced it was at an impasse.

### A

The jury retired to commence deliberations at 3:50 p.m. on September 7.[2] On September 8, the jury asked to see the knife used against P.D. It also requested

---

[2] All dates in this section refer to 2023.

clarification regarding lesser offenses, and readback of the trial testimony of six witnesses. The requested testimony was read to the jury, and the trial court provided a response to the jury's request for clarification. The jurors recessed at 4:15 p.m. and resumed deliberations at 9 a.m. on September 11.

At 10:14 a.m. on September 11, the jury asked for readback of additional trial testimonies. The requested testimonies were read to the jury, and at 1:42 p.m. the trial court received a note that the jury was deadlocked and seeking advice on how to proceed. Outside the presence of the jury, the prosecutor and defense attorney did not object when the trial court announced it would give a so-called firecracker instruction and send the jury back to deliberate. At 2:23 p.m., the trial court instructed the jury as follows:

> "Ladies and gentleman, I have further instructions and directions to give you at this time. It has been my experience on more than one occasion, that a jury which initially reported [it] was unable to reach a verdict was ultimately able to arrive at verdicts. [¶] To assist you in your further deliberations, I'm going to instruct you as follows: [¶] Your goal as jurors should be to reach a fair and impartial verdict if you are able to do so based solely on the evidence presented and without regard for the consequences of your verdict regardless of how long it takes to do so. [¶] It is your duty as jurors to carefully consider, weigh and evaluate all the evidence presented at the trial, to discuss your views regarding the evidence and to listen to and consider the views of your fellow jurors. [¶] In the course of your further deliberations, you should not hesitate to re-examine your own views or to request your fellow jurors to re-examine theirs. You should not hesitate to change a view you once held if you are convinced it is wrong or to suggest other jurors change their views if you are convinced they are wrong. Fair and effective jury deliberations require a frank and forthright exchange of views. [¶] As I previously instructed you, each of you must decide the case yourself, and you should do so only after a full and complete consideration of all of the evidence with your fellow jurors. [¶] It is your duty as jurors to deliberate with a goal of arriving at a verdict on the charges if you can do so without violence to your individual judgment. Both the People and the defendant are entitled to the individual judgment of each juror. [¶] As I previously instructed you, you have the absolute discretion to conduct your deliberations in any way you deem appropriate. [¶] May I suggest that since you have not been able to arrive at a verdict using the methods that you have chosen that you consider changing the methods you have been using, at least temporarily and try new methods. [¶] For example, you may wish to consider having different jurors lead the discussions for

4

a period of time or you may wish to experiment with reverse role playing by having those on one side of an issue present an argument on the other side's position and vice versa. This might enable you to better understand the other's positions. [¶] By suggesting you should consider changes in your methods of deliberations, I want to stress I am not instructing or dictating to you as to how to conduct your deliberations. I merely suggest you may find it productive to do whatever is necessary to ensure each juror has a full and fair opportunity to express his or her views and consider and understand the views of the other jurors. [¶] I also suggest you reread Instruction 200 and 3550.[3] These instructions

---

[3] The trial court had previously instructed the jury with CALCRIM No. 3550 as follows:

"When you go to the jury room, the first thing you should do is choose a foreperson. The foreperson should see to it that your discussions are carried on in an organized way and that everyone has a fair chance to be heard. [¶] It is your duty to talk with one another and to deliberate in the jury room. You should try to agree on a verdict if you can. Each of you must decide the case for yourself but only after you have discussed the evidence with the other jurors. Do not hesitate to change your mind if you become convinced that you are wrong. But do not change your mind just because other jurors disagree with you. Keep an open mind and openly exchange your thoughts and ideas about this case. [¶] Stating your opinions too strongly at the beginning or immediately announcing how you plan to vote may interfere with an open discussion. Please treat one another courteously. Your role is to be an impartial [judge] of the facts, not to advocate for one side or the other. [¶] As I told you at the beginning of the trial, do not talk about the case or about any of the people or any subject involved in it with anyone, including but not limited to, your spouse, or other family, or friends, spiritual leaders, or advisors, or therapists. [¶] You must discuss the case only in the jury room, and only when all jurors are present. Do not discuss your deliberations with anyone. [¶] Do not communicate using Twitter, Instagram, Facebook, or any other form of social media during your deliberations. [¶] It's very important that you not use the internet in any way in connection with this case during your deliberations. [¶] During the trial several items were received into evidence as exhibits. You may examine whatever exhibits you think will help you in your deliberations. These exhibits will be sent into the jury room with you when you begin to deliberate. The few exceptions are the knife, as well as the two evidentiary kits. [¶] If you need to communicate with me while you are deliberating, send a note through the bailiff signed by the foreperson, or by one or more members of the jury. [¶] To have a complete record of this trial, it is important that you not communicate with me except by written note. [¶] If you have questions, I will talk with the attorneys before I answer so it may take some time. You should continue your deliberations

5

pertain to your duties as jurors and make recommendations on how you should deliberate. [¶] The intensity of a trial requires that jurors at all times, during their deliberations, conduct themselves as required by the instructions 200 and 3550. CalCrim instructions 200 and 3550 define the duties of a jury. [¶] You must determine what facts have been proved from the evidence received in this trial and not from any other source. A fact is something proved by the evidence or by stipulation. [¶] Second, you must apply the law I have stated to you to the facts as you determine them, and in this way, arrive at your verdict. [¶] You must accept and follow the law as I stated to you regardless of whether you agree with the law. If anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions. [¶] Instruction 3550 defines the jury's duty to deliberate. The decisions you make in this case must be based on the evidence received in this trial and the instructions given by the Court. These are the matters this instruction requires you to discuss for the purpose of reaching a verdict. [¶] Instruction 3550 also recommends how jurors should approach their tasks. You should keep in mind the recommendations this instruction suggests when considering the additional instructions, comments, and suggestions I have made in the instructions now presented to you. I hope my comments and suggestions may be of some assistance to you. [¶] You are ordered to continue your deliberations at this time. If you have other questions, concerns or requests, please put those in writing on the form my bailiff has provided you with. Have them signed and dated by the foreperson and please notify the bailiff. [¶] At this point, I'm ordering you to resume deliberations."

The trial court did not inquire as to the numerical division of the jurors.

---

while you wait for my answer. I will answer any questions in writing or orally here in open court. [¶] Do not reveal to me or anyone else how the vote stands on the question of guilt or issues in this case unless I ask you to do so. [¶] Your verdict on each count and any allegation must be unanimous. This means that to return a verdict all of you must agree to it. [¶] Do not reach a decision by the flip of a coin or by any similar act. It is not my role to tell you what your verdict should be. [¶] Do not take anything I said or did during the trial as an indication what I think about the facts, the witnesses, or what your verdict should be. You must reach your verdict without any consideration of punishment. [¶] You will be given verdict forms. As soon as all jurors have agreed on a verdict, the foreperson must date and sign the appropriate verdict forms and notify the bailiff. [¶] If you are able to reach a unanimous decision only on one or only on some of the charges, fill in those verdict forms only and notify the bailiff. Return any unsigned verdict form."

The jury resumed deliberations after the firecracker instruction was given and recessed at 4:15 p.m. Deliberations resumed at 9 a.m. on September 12. The court reporter completed the requested readback. At 2:53 p.m., the jury indicated it had verdicts on four counts and was deadlocked on three counts. Without objection, the trial court brought the jury in and took the verdicts. It declared a mistrial on the remaining counts.

B

"Section 1140 provides: 'Except as provided by law, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties, entered upon the minutes, or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree.' [¶] 'The determination whether there is reasonable probability of agreement rests in the discretion of the trial court. [Citations.] The court must exercise its power, however, without coercion of the jury, so as to avoid displacing the jury's independent judgment "in favor of considerations of compromise and expediency." [Citation.]' [Citation.] The question of coercion is necessarily dependent on the facts and circumstances of each case." (*People v. Sandoval* (1992) 4 Cal.4th 155, 195-196.)

When the jury reports it has reached an impasse in its deliberations, a trial judge may give additional instructions if it determines the instructions might assist the jury in reaching a verdict. (Cal. Rules of Court, rule 2.1036.) In reviewing a claim that the trial judge's supplemental instructions coerced a verdict, we determine " 'whether the instructions tend[ed] to impose such pressure on jurors to reach a verdict that we are uncertain of the accuracy and integrity of the jury's stated conclusion' " by assessing " 'the potential effect of a given instruction on the fact finding process, rather than as an attempted inquiry into the actual volitional quality of a particular jury verdict.' " (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 461.) An instruction is coercive

7

when it " 'inject[s] illegitimate considerations into the jury debates [and] . . . appeal[s] to dissenting jurors to abandon their own independent judgment of the case against the accused,' by placing 'excessive pressure on the dissenting jurors to acquiesce in a verdict.' " (*Ibid.*)  We review the correctness of any instruction by considering the entire charge of the trial court and not parts of an instruction or a particular instruction.  (*People v. Santiago* (2009) 178 Cal.App.4th 1471, 1476; *People v. Castillo* (1997) 16 Cal.4th 1009, 1016.)

Defendant points to the following sentence in the firecracker instruction:  "It is your duty as jurors to deliberate with a goal of arriving at a verdict on the charges if you can do so without violence to your individual judgment."  He argues the word "violence" in that sentence "set[] an extreme standard that any lesser capitulation is deemed acceptable" and led jurors to believe they must surrender their individual judgment unless the extreme standard of violence was met.  We disagree.

Defendant acknowledges the challenged instruction is virtually identical to the instruction given in *People v. Moore* (2002) 96 Cal.App.4th 1105 (*Moore*).  *Moore* rejected a claim that a supplemental instruction containing the same sentence to which defendant objects exerted pressure on jurors to reach a verdict.  (*Id.* at pp. 1118-1122.)  The court held that nothing in the trial court's charge coerced the jury to abdicate its independent judgment to reach a verdict.   (*Id.* at p. 1121.)  The sentence defendant criticizes is also substantially similar to the following sentence in the American Bar Association sample instruction approved by the California Supreme Court in *People v. Gainer* (1997) 19 Cal.3d 835, 856 (*Gainer*):  "It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment."  (*Id.* at p. 856, fn. 21, disapproved on another point in *People v. Valdez* (2012) 55 Cal.4th 82, 163-164.)

The trial court here did not tell the jurors to surrender their individual judgment.  Instead, it instructed that each juror must make their own decisions.  It admonished the

jury, "do not change your mind just because other jurors disagree with you." It said, "Both the People and the defendant are entitled to the individual judgment of each juror." Additionally, it did not push for any verdict. And the firecracker instruction did not contain the improper elements of the instruction disapproved in *Gainer, supra*, 19 Cal.3d 835, in that it did not encourage jurors to consider the numerical division of the jury in reexamining their views or state that the case will have to be retried if the jury fails to reach a verdict. (*Gainer*, at p. 852; *People v. Whaley* (2007) 152 Cal.App.4th 968, 984 (*Whaley*) [concluding that an instruction containing the statement that jurors should arrive at a verdict only if they could do so without violence to their individual judgment was not an impermissible *Allen v. United States* (1896) 164 U.S. 492 charge].) Because the jury continued to deliberate for about another day and continued to be deadlocked on three counts after receiving the supplemental instruction, the record does not support the claim that the supplemental instruction coerced the jury to reach a verdict.

Defendant further contends the suggestion of reverse role-playing contravened the jury's duty to be an impartial factfinder, and it intruded on the juror's deliberations and thought processes. But the California Supreme Court rejected a claim that such a suggestion was coercive. (*People v. Peoples* (2016) 62 Cal.4th 718, 783-784 (*Peoples*).) The trial court had instructed the jurors to use their independent judgment and to come to their own individualized determinations. (*Id.* at p. 784.) It did not order the jurors to engage in reverse role-playing. (*Ibid.*)

The same circumstances are present here. The trial court admonished the jurors to openly exchange their thoughts and ideas about the case, to listen to and consider the views of fellow jurors, and that their role was to be an impartial judge of the facts and not to advocate for one side or the other. It suggested reverse role-playing so that jurors might better understand the views of other jurors. It emphasized, however, that it was not dictating how jurors conduct their deliberations. And it did not instruct any juror to surrender to the views of other jurors.

9

As in *Peoples, supra*, 62 Cal.4th 718, *Whaley, supra*, 152 Cal.App.4th 968, and *Moore, supra*, 96 Cal.App.4th 1105, considering the entire charge to the jury, we conclude the trial court did not err in giving the supplemental instruction.

II

Defendant next contends the trial court erred in not imposing lower-term sentences based on his PTSD.

Senate Bill No. 567 (2021-2022 Reg. Sess.; Stats. 2021, ch. 731, § 1.3) amended section 1170, long before defendant was sentenced, to limit a trial court's discretion in sentencing when the statute specifies three possible terms. (*People v. Lynch* (2024) 16 Cal.5th 730, 748.) The middle term is the presumptive term unless specified circumstances exist. (§ 1170, subd. (b)(1).) The amended statute creates a presumption that a trial court should impose the low term if psychological trauma was a contributing factor in the commission of the offense. (§ 1170, subd. (b)(6); *People v. Salazar* (2023) 15 Cal.5th 416, 419.) The trial court may depart from the presumption only if it finds the aggravating circumstances outweigh the mitigating circumstances such that imposition of the low term would be contrary to the interests of justice. (§ 1170, subd. (b)(6); *Salazar,* at p. 419.)

Past trauma, by itself, is not enough for the low-term presumption to apply. The defendant's past trauma must be a contributing factor to the offense. (§ 1170, subd. (b)(6); *People v. Knowles* (2024) 105 Cal.App.5th 757, 765; see *People v. Fredrickson* (2023) 90 Cal.App.5th 984, 991-994.)

Defendant's trial counsel argued to the jury that defendant had been drinking and getting drunk on the day of the offenses, but the sexual offenses and assault did not occur. According to the defense, P.D.'s accusations were the result of confabulation. Similarly, defendant told the probation officer he drank alcohol and smoked crystal methamphetamine the day before the charged crimes but he denied committing the crimes. In contrast, defendant's sentencing memorandum stated he had acted under the

10

influence and made impulsive decisions. Defendant and the People did not mention section 1170, subdivision (b)(6), nor was it mentioned in the probation officer's report.

At the sentencing hearing, defendant's trial counsel mentioned, among other things, that defendant had been honorably discharged from the Navy and was disabled by PTSD. Counsel did not assert that PTSD was a contributing factor in the commission of the charged offenses. None of the portions of the reporter's transcript cited in defendant's appellate opening brief show that defendant's actions were the result of PTSD or psychological trauma.

Because nothing in the record indicates that psychological trauma contributed to defendant's offenses, defendant has not shown that the low-term presumption in section 1170, subdivision (b)(6) applied. *People v. Panozo* (2021) 59 Cal.App.5th 825, a case on which defendant relies, is inapposite because the defendant in *Panozo* claimed PTSD contributed to his circumstances, and the appellate court held the trial court should have complied with sections 1170.9 and 1170.91, statutes defendant does not argue apply in this case. (*Panozo,* at pp. 828-830, 838-841.)

### III

In addition, defendant contends the trial court should have stayed the count two sentence for assault with a deadly weapon under section 654. He argues the rape and the assault with a deadly weapon were based on an indivisible course of conduct. Although defendant did not raise the issue in the trial court, the failure to properly stay a sentence under section 654 would be an unauthorized sentence that can be asserted on appeal absent an objection. (*People v. Scott* (1994) 9 Cal.4th 331, 354, fn. 17.)

Section 654, subdivision (a) provides that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." The purpose of section 654 is to ensure that a defendant's punishment is

11

commensurate with his or her culpability and that the defendant is not punished more than once for one criminal act.  (*People v. Govan* (2023) 91 Cal.App.5th 1015, 1034.)

The section 654 prohibition against double punishment applies to a single act or to a course of conduct that constitutes an indivisible transaction.  (*People v. Latimer* (1993) 5 Cal.4th 1203, 1207-1209, 1216; *People v. Perez* (1979) 23 Cal.3d 545, 551.)  Whether a course of conduct is indivisible depends upon the intent and objective of the defendant.  (*Perez*, at p. 551.)  "[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, [the] defendant may be found to have harbored a single intent and therefore may be punished only once.  [Citation.]  [¶]  If, on the other hand, [the] defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he [or she] may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' "  (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

The defendant's intent and objective are factual questions for the trial court.  (*People v. Coleman* (1989) 48 Cal.3d 112, 162.)  We review the trial court's factual findings in imposing multiple punishment for substantial evidence.  (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [defining substantial evidence]; *People v. Blake* (1998) 68 Cal.App.4th 509, 512.)  We view the record in the light most favorable to the trial court's findings and presume the existence of every fact the trial court could reasonably deduce from the evidence.  (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

The prosecutor told the jury that the count two charge of assault with a deadly weapon was based on defendant hitting P.D. on the head with the knife.  P.D. testified that when she told defendant not to shut the drapes, he told her to shut up and became physically aggressive with her.  P.D. asked defendant what was wrong and he hit her in the head with the knife.  The blow caused her to fall to the floor.

The elements of assault with a deadly weapon are as follows: (1) defendant did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person; (2) defendant did the act willfully; (3) when the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and (4) when defendant acted, he had the present ability to apply force with the deadly weapon. (*People v. Golde* (2008) 163 Cal.App.4th 101, 121.)

The prosecutor told the jury that the count one charge of rape was based on defendant having nonconsensual intercourse with P.D. while threatening her with the knife. P.D. testified that after defendant struck her with the knife, he dragged her to the bedroom, forced her to orally copulate him, and raped her while threatening to ram her with the knife.

The elements of rape are (1) an act of sexual intercourse, (2) accomplished against the will of the victim, (3) by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another. (§ 261, subd. (a)(2); *Smith v. Superior Court* (1956) 140 Cal.App.2d 862, 863; *People v. Scott* (2000) 83 Cal.App.4th 784, 794, fn. 4.)

Based on this record, the trial court was not required to apply section 654 and stay the sentence on the count two assault with a deadly weapon conviction. The count one rape and the count two assault were based on different acts. To the extent the acts constituted a course of conduct, viewed in the light most favorable to the sentences imposed, P.D.'s testimony supported a finding that defendant harbored independent objectives that were not merely incidental to each other in committing the offenses. The trial court could have reasonably found that defendant's objective in hitting P.D. with the knife was to shut her up, and his objective in committing the rape was to humiliate her (by referencing her ex-husband) and to obtain sexual gratification. Defendant threatened P.D. with the knife during the rape. The cases defendant cites – *People v. Gay*

13

(1964) 230 Cal.App.2d 102 and *People v. Westbrook* (1976) 57 Cal.App.3d 260 – do not contain facts supporting a finding of independent objectives and do not compel a different result here.

DISPOSITION

The judgment is affirmed.

/S/
MAURO, Acting P. J.

We concur:

/S/
KRAUSE, J.

/S/
WISEMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14