Filed 10/4/13  P. v. Silva CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037780 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. Nos. F19909, WF00879, W13885) |
| v. | |
| THOMAS HENRY SILVA, | ORDER MODIFYING OPINION |
| Defendant and Appellant. | |

BY THE COURT:

It is ordered that the opinion filed herein on September 19, 2013, be modified in the following particulars:

On page 1, line 2, eliminate the words "by threat of violence."

On page 1, line 3, change the cite "subd. (c)(4)" to "subd. (c)(1)."

There is no change in judgment.

Dated:_____

_____
Premo, J.

_____
Rushing, P.J.

_____
Elia, J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037780 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. Nos. F19909, WF00879, W13885) |
| v. | |
| THOMAS HENRY SILVA, | |
| Defendant and Appellant. | |

In Santa Cruz County case No. F19909, a jury convicted defendant Thomas Henry Silva of misdemeanor violating a criminal protective order by threat or violence (Pen. Code, § 166, subd. (c)(4), count 3),[1] dissuading a witness from prosecuting a crime (§ 136.1, subd. (b)(2), count 4), and dissuading a witness from testifying (*id*. subd. (a)(2), count 5).  It could not reach a verdict on counts charging criminal threat, assault with a deadly weapon, and intimate partner battery (counts 1, 2, and 6).  The trial court dismissed counts 1, 2, and 6 in the interest of justice, revoked probation in Santa Cruz County case Nos. WF00879 and W13885, and sentenced defendant to 12 years and eight months in prison.  The sentence included a five-year serious-felony sentence enhancement.  (§ 667, subd. (a)(1) [person convicted of a serious felony shall receive five-year enhancement for each prior serious-felony conviction].)  On appeal in Santa Cruz County case No. F19909, defendant contends that the trial court erred by (1) coercing the jury to return verdicts on counts 3 and 4 after an impasse, and (2) imposing

---

[1] Further unspecified statutory references are to the Penal Code.

the serious-felony enhancement.  We disagree and affirm the judgment.  On appeal in Santa Cruz County case Nos. WF00879 and W13885, defendant raises no issues.  We therefore also affirm those judgments.

## BACKGROUND

Defendant had an acrimonious, on-again off-again relationship with Elsa Esparza. He had pleaded no contest to violating a protective order in favor of Esparza, and the trial court had issued a protective order as part of the resolution of that case.  In an attempt at reconciliation, defendant confronted Esparza at her home.  Afterward, Esparza called the police and reported that defendant had held a knife to her cheek.  The police arrested defendant two days later.  They recorded defendant's telephone calls from jail to Esparza. The recordings provided the evidence against defendant on counts 4 and 5.

Defendant testified and claimed that (1) Esparza had fabricated the knife-assault scenario, and (2) during the jailhouse telephone calls, he had encouraged Esparza to be honest rather than drop the charges.

After deliberating for two days, the jury informed the trial court that it had reached a verdict on count 5 but could not reach a verdict on the other counts.  This colloquy followed.

 "THE COURT:  [Juror No. 8], as the foreperson, let me ask you some questions, please. [¶] You folks have obviously been deliberating together and discussing and considering the matter.  You have asked for some further instructions on the law and some clarification of some factual issues. [¶] Let me ask you, [Juror No. 8], do you think--if I were to ask you folks to continue to deliberate, discuss together, do you think there's any reasonable probability that the jury might arrive at a verdict on any of the other counts?  Doesn't have to be all of them.

"JUROR No. 8:  On some of them, yes.  On others, it doesn't seem as likely.

"THE COURT:  Ah.  But on some of them, yes?

"JUROR No. 11:  No, no.

2

"JUROR No. 10:  No.

"JUROR No. 8:  No?  Oh, we can't agree on much.  No.

"THE COURT:  Okay.  Well, [Juror No. 8] said yes, in her opinion, she thought it was a reasonable probability that there may be some developments. [¶] Let me ask you, [Juror No. 1], is it your opinion that if I ask you all to go back and to continue to deliberate, that there is a reasonable probability that you will reach agreement on something else, not everything else, but perhaps any one or more of the other counts, in your opinion, sir?

"JUROR No. 1:  I think there's a reasonable possibility in exploring the--your instructions on, um, considering each charge individually and also in the sense of forming a group decision.  I think there is a possibility of further decisions--further agreements, I should say.

"THE COURT:  Okay.  All right.  [Juror No. 2], what is your opinion, sir.

"JUROR No. 2:  I doubt the possibility of agreement.

"THE COURT:  You doubt it on any of the other five remaining?

"JUROR No. 2:  Unless something dramatic changes, I don't think there will be a decision on those other five.

"THE COURT:  Okay.  [Juror No. 3], what is your opinion?

"JUROR No. 3:  I agree.  We explored this possibility that you would raise this, and, um, I would--I thought that we were all in the understanding that we could not go further, that there was some absolutes that would not change.

"THE COURT:  All right.  Let me ask this as a group:  Is there anyone else who does think that if I asked you to continue your deliberations, there is a reasonable probability that there may be some developments on even just one more count? [¶] It doesn't--all counts do not have to be decided.  Each is a separate consideration, and you, obviously, know that, because you've come to a decision on one count. [¶] Two people have said, Yes, there is.  Two people have said, No, I don't think so. [¶] Please raise your

3

hand if you think there is a possibility if I ask you to continue your discussions and your deliberations together, please. [¶] (Jurors comply.) [¶] Okay.

"JUROR No. 3: Is it what we want?

"THE COURT: Well, I will share with you that the law provides if any member of the jury indicates there's a reasonable probability that there could be further developments, then it's my obligation to ask you to continue in your deliberations. [¶] So it's kind of late. What we're going to do--I see we have extra deputies in the courtroom, so, Mr. Bailiff, may I ask you to go and get Verdict Form Number 5 for me, please. [¶] . . . [¶] Because we'll formally return that to court and put it under seal. [¶] (Bailiff complies.) [¶] And then what we'll do, 'cause it's late, we'll send you home tonight. Okay? And you just think about your deliberations, and these kinds of things, and I want you to think about if there's any further assistance I can give you. If you'd like to ask for further clarification on any of the instructions, if you'd like to ask for any further guidance in any way, you're welcome to do so. If not, that's fine as well, but think about it overnight. [¶] I know you're working hard. I know you're working on this with good faith, and as I said, some of the jurors have indicated that it is reasonably possible or probable. So we'll send you back based on that assessment. [¶] And I do want you to come back tomorrow with a fresh and open mind. [¶] Do remember there's an instruction that I've given you that you should consider--if you disagree with another juror, you should think about the reasons that they articulate for their position. You should try and articulate the reasons for your position. You should not give up your position just because another juror disagrees with you, of course. Each of you will make your own independent decisions, but you should give consideration to the thoughts of each member of the jury, and there's a particular instruction that says that better than I just did, but I'll refer you back to it. [¶] . . . [¶]

"JUROR No. 11: Judge, I understood that we came in here because we had reached unanimity on our disagreements about the other counts. I'm just amazed that we

4

are now being asked on come again to reconsider what I thought we had all already decided.

"THE COURT: Well, I asked a question, and four jurors raised their hands in answer to the question, is there a reasonable probability that if I ask you to deliberate further, the jury might arrive at a verdict? Four people said yes, and given that response, it is my obligation to ask you to continue to deliberate."

The next day, the jury deliberated and reached verdicts on counts 3 and 4. The foreperson represented that there was no reasonable probability that verdicts could be reached on counts 1, 2, and 6.

JURY COERSION

Defendant contends that the trial court erred by giving the jury a coercive instruction after it returned the verdict on count 5. According to defendant, "the trial court inaccurately and coercively told the jurors that it was *obligated* to have them continue their deliberations so long as even one juror believed additional verdicts might be possible." He cites authority for the proposition that "a trial court has the discretion to declare a mistrial without the jury's unanimous endorsement of that action" if it satisfactorily appears that there is no reasonable probability that the jury can agree. He reasons that "The trial court's erroneous explanation of the standard for declaring a mistrial left the jurors with the false impression that they would necessarily be stuck deliberating for as long as even one among their number believed further verdicts might be possible." He concludes that this "amplified the pressure to return verdicts and skewed the dynamic of the jury room towards a paramount imperative of unanimity." He bolsters his conclusion by arguing that the trial court "failed to specify whether a juror might permissibly abandon her individual judgment *to achieve a consensus*," "invited a juror to consider conforming her 'independent decision[]' to the thoughts of her peers," "said nothing to the deadlocked jury of 'the right of both the People and the defendant to

5

the individual judgment of each juror on the issue of guilt,' " and "never followed up on its promise by referring the jury to the 'particular instruction' that it had in mind."

Preliminarily, the People argue that defendant forfeited his present contention by failing to object to the challenged instruction. They rely on *People v. Neufer* (1994) 30 Cal.App.4th 244. There, however, the defendant was arguing that, after learning that the jurors were split 11 to 1 in favor of guilt, the trial court erred by requiring them to continue to deliberate *at all.* (*Id.* at p. 253.) He was not arguing that the trial court gave an improperly coercive *instruction.* Here, by contrast, defendant is raising precisely that argument. Hence, the controlling principle is that an objection is not necessary to preserve a claim that a jury instruction violated the defendant's substantial rights. (§§ 1176, 1259, 1469; see also *People v. Barraza* (1979) 23 Cal.3d 675, 683-684 [assertedly coercive instruction was reviewable despite defense counsel's statement that he had no objection to it].)

"The court may ask jurors to continue deliberating where, in the exercise of its discretion, it finds a 'reasonable probability' of agreement." (*People v. Pride* (1992) 3 Cal.4th 195, 265, quoting § 1140.) " 'The court must exercise its power, however, without coercion of the jury, so as to avoid displacing the jury's independent judgment "in favor of considerations of compromise and expediency." [Citation.]' [Citation.] The question of coercion is necessarily dependent on the facts and circumstances of each case." (*People v. Sandoval* (1992) 4 Cal.4th 155, 195-196, quoting *People v. Breaux* (1991) 1 Cal.4th 281, 319, quoting *People v. Carter* (1968) 68 Cal.2d 810, 817.)

To determine whether an instruction is coercive, we ask "whether [it] tend[s] to impose such pressure on jurors to reach a verdict that we are uncertain of the accuracy and integrity of the jury's stated conclusion. This determination . . . is perhaps best characterized as requiring a generalized assessment of the potential effect of a given instruction on the fact finding process, rather than as an attempted inquiry into the actual

6

volitional quality of a particular jury verdict." (*People v. Gainer* (1977) 19 Cal.3d 835, 850.)

Here, defendant's premise is that the trial court, in a rather lengthy dialogue, coerced the jury by instructing that it was *obligated* to order the jury to continue deliberating rather than instructing something akin to that it was *choosing* to order the jury to continue deliberating. But regardless whether the word "obligated" conveyed an incorrect standard for declaring a mistrial, we disagree with defendant that the instruction, as given, tended to impose such pressure on the jurors to reach a verdict that we are uncertain of the accuracy and integrity of the jury's stated conclusion.

First, the instruction on its face does not state, as defendant supposes, that the trial court "was *obligated* to have [the jury] continue their deliberations so long as even one juror believed additional verdicts might be possible." The trial court twice stated that it was obligated "to ask" the jury to continue deliberating because a member or members saw a reasonable possibility of a verdict. It explained that "some of the jurors have indicated that it is reasonably possible or probable. So we'll send you back based on that assessment." This does not convey that the jury "would necessarily be stuck deliberating" as long as one member believed further verdicts might be possible. Thus, it is not reasonably likely that the jurors understood the instruction as defendant suggests. (*People v. Nem* (2003) 114 Cal.App.4th 160, 165.)

Second, the instruction is, at worst, ambiguous. In the present context, a reasonable juror could construe the concept "obligated to ask" in the same way as a layman might construe the phrase "choosing to ask" rather than as a statement of the legal standard for declaring a mistrial that will keep jurors deliberating until no member believes further verdicts might be possible. " 'Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way the lawyers might.' " (*People v. Williams* (1995) 40 Cal.App.4th 446, 457.) Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are

7

reasonably susceptible to such interpretation.  (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

And third, as we mentioned earlier, defense counsel's failure to object does not rise to the level of a forfeiture.  However, it does support our conclusion that the instruction as a whole was not coercive:  "[W]here, as here, defense counsel does not object to a supplemental instruction, 'such an omission indicates that the potential for coercion argued now was not apparent to one on the spot.' "  (*People v. Whaley* (2007) 152 Cal.App.4th 968, 983, quoting *Lowenfield v. Phelps* (1988) 484 U.S. 231, 240.)

In a related point, defendant contends that he received ineffective assistance of counsel because "at a crucial moment in the jury's deliberations--the announcement of an impasse after a lengthy deliberation relative to the length of the evidentiary portion of trial--trial counsel should have ensured that the court adequately instructed the jury on the venerable principle that 'jurors are not required to surrender their honest convictions for the mere purpose of agreeing upon a verdict.' "  Defendant fails to carry his appellate burden.

To prevail on a claim of ineffective assistance of counsel, a defendant "must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice.  [Citation.]  Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts.  [Citation.]  To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation . . . .'  [Citation.]  Finally, prejudice must be affirmatively proved; the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.' "  (*People v. Bolin* (1998) 18 Cal.4th 297, 333.)

Here, before the jury began deliberating, the trial court instructed it in the language of CALCRIM No. 3550 as follows: "You should try and agree on a verdict if you can. Each of you must decide the case for yourself, but only after you have discussed the evidence with all of the other jurors. [¶] Do not hesitate to change your mind if you become convinced that you're wrong, but do not change your mind just because other jurors disagree." And, as we have recounted, in the instructions given after the jury returned the verdict on count 5, the trial court informed the jury again that "[y]ou should not give up your position just because another juror disagrees with you, of course."

These instructions are sufficient to inform the jury that one should not surrender an honest conviction for the mere purpose of agreeing on a verdict.

"The trial court need not give instructions which are covered by other properly given instructions." (*People v. Tapia* (1994) 25 Cal.App.4th 984, 1028.)

Thus, since trial counsel could have reasonably concluded that the trial court's instructions were adequate, defendant fails to demonstrate deficient performance. And, since the given instructions adequately informed the jury of the no-surrender principle, defendant fails to demonstrate prejudice--that there is a reasonable probability the verdict would have been different had defense counsel requested and the trial court given another instruction on the no-surrender principle.

SERIOUS-FELONY ENHANCEMENT

Section 667, subdivision (a), provides that any person convicted of a serious felony, who previously has been convicted of a serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a consecutive five-year enhancement for each prior conviction on charges brought and tried separately. In addition, this subdivision provides: "(4) As used in this subdivision, 'serious felony' means a serious felony listed in subdivision (c) of Section 1192.7." (§ 667, subd. (a)(4).)

9

Section 1192.7, subdivision (c)(37), in turn, lists as a serious felony "intimidation of victims or witnesses, in violation of Section 136.1."

Defendant was convicted of felony violations of section 136.1, subdivisions (b)(2) and (a)(2). At sentencing, the trial court imposed a consecutive five-year enhancement for a prior serious-felony conviction. Defendant contends that a conviction for a violation of section 136.1, subdivision (b)(2) or (a)(2) is not a serious felony as defined in section 1192.7.

Without citation to authority, defendant essentially argues that only section 136.1, subdivision (c)(1),[2] which requires an express or implied threat of force or violence,

---

[2] Section 136.1 provides:

"(a) Except as provided in subdivision (c), any person who does any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:

"(1) Knowingly and maliciously prevents or dissuades any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law.

"(2) Knowingly and maliciously attempts to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law.

"(3) For purposes of this section, evidence that the defendant was a family member who interceded in an effort to protect the witness or victim shall create a presumption that the act was without malice.

"(b) Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:

"(1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge.

"(2) Causing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof.

"(3) Arresting or causing or seeking the arrest of any person in connection with that victimization.

"(c) Every person doing any of the acts described in subdivision (a) or (b) knowingly and maliciously under any one or more of the following circumstances, is (continued)

10

qualifies as a serious felony within the meaning of section 1192.7, subdivision (a)(37), because violations of section 136.1, subdivisions (b)(2) or (a)(2) can be committed without intimidating a witness or victim. In short, according to defendant, only section 136.1, subdivision (c)(1), is witness intimidation within the meaning of section 1192.7, subdivision (c)(37).

Defendant acknowledges that the court in *People v. Neely* (2004) 124 Cal.App.4th 1258 (*Neely*), holds that all section 136.1 felony violations, not only section 136.1, subdivision (c)(1) violations, are serious felonies within the meaning of section 1192.7, subdivision (c)(37). The court stated: "We conclude all felony violations of Penal Code section 136.1 are serious felonies within the meaning of Penal Code Section 1192.7, subdivision (c)(37) . . . based on the language of Penal Code section 1192.7, subdivision (c)(37), the language of Penal Code section 136.1, the legislative aid to statutory construction found in Penal Code section 7.5, and a reading of the provision in the context of the entire statutory scheme. We note that such a construction is also consistent with the intent of the voters to expand the list of serious felonies and make them subject to increased penalties." (*Neely*, *supra*, at p. 1268.)

Defendant, however, urges that *Neely* was wrongly decided.

---

guilty of a felony punishable by imprisonment in the state prison for two, three, or four years under any of the following circumstances:

"(1) Where the act is accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person or the property of any victim, witness, or any third person.

"(2) Where the act is in furtherance of a conspiracy.

"(3) Where the act is committed by any person who has been convicted of any violation of this section, any predecessor law hereto or any federal statute or statute of any other state which, if the act prosecuted was committed in this state, would be a violation of this section.

"(4) Where the act is committed by any person for pecuniary gain or for any other consideration acting upon the request of any other person. All parties to such a transaction are guilty of a felony. . . ."

11

"The rules governing statutory construction are well settled.  We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent.  [Citations.]  To determine legislative intent, we turn first, to the words of the statute, giving them their usual and ordinary meaning.  [Citations.]  When the language of a statute is clear, we need go no further.  However, when the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part."  (*People v. Flores* (2003) 30 Cal.4th 1059, 1063.)

In March 2000, the voters approved Proposition 21, the Gang Violence and Juvenile Crime Prevention Act of 1998, which, among other changes, added to the list of serious felonies, "intimidation of victims or witnesses, in violation of section 136.1."  (§ 1192.7, subd. (c)(37).)

" 'In interpreting a voter initiative . . . we apply the same principles that govern statutory construction.  [Citation.]  Thus, "we turn first to the language of the statute, giving the words their ordinary meaning."  [Citation.]  The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent].  [Citation.]  When the language is ambiguous, "we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." ' "  (*People v. Briceno* (2004) 34 Cal.4th 451, 459.)

Hence, we look to the language of section 1192.7, subdivision (c)(37).  It refers to "intimidation of victims or witnesses" in violation of section 136.1.  The reference to section 136.1 is not limited by reference to a specific subdivision.  On its face, it appears to encompass the entire code section.  Accordingly, we need go no further.  "When the language of a statute or constitutional provision is clear and unambiguous, judicial

12

construction is not necessary and the court should not engage in it." (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 323.)

In any event, we observe that subdivisions (b)(2) and (a)(2) of section 136.1 encompass the concept of intimidation.

The word intimidation comes from the verb to intimidate. (Webster's 3d New Internat. Dict. (1993) p. 1184.) The dictionary definition of "intimidate" is "to make timid or fearful: inspire or affect with fear." (*Ibid.*) One can become fearful, and thus, intimidated by someone or something without any force or violence being present. Take this case as an example. If Esparza had cared for defendant and did not want him to go to prison, his pleas to her to "drop the charges," could have made her fearful of losing him. As such, she might not have testified. No force or violence would be present, but Esparza might have been affected with fear into not testifying. Hence, she would have been intimidated into not testifying.

Beyond the technical definition of serious felony, the crime of deliberately trying to prevent facts from being revealed before a criminal tribunal is a matter of the utmost gravity. Courts cannot function properly when attempts are made to manipulate witnesses and prevent evidence from seeing the light of day. We reject defendant's contention that *Neely* was wrongly decided.

DISPOSITION

The judgments in Santa Cruz County case Nos. F19909, WF00879, and W13885 are affirmed.

_____
Premo, J.

WE CONCUR:

_____
Rushing, P.J.

_____
Elia, J.

14