Filed 6/15/15  P. v. Escamilla CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049349 |
| v. | (Super. Ct. No. 12CF2330) |
| DANNY ESCAMILLA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Dan McNerney, Judge.  Affirmed as modified.

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L.Garland, Assistant Attorney General, Anthony DaSilva and Martin E. Doyle, Deputy Attorneys General, for Plaintiff and Respondent.

\*              \*              \*

Defendant Danny Escamilla (defendant) contends the court erred in providing supplemental jury instructions that coerced the jury into agreeing to a unanimous verdict on the count one charge for the attempted murder of Daniel Hernandez and also in failing to stay the sentence on the count four burglary conviction. The court did not err in providing the supplemental jury instructions. However, it did err in failing to stay the sentence on count four, pursuant to Penal Code section 654.[1] The execution of sentence on the count four burglary conviction shall be stayed. In all other respects, we affirm the judgment.

## I

## FACTS

*A. Altercation:*

Defendant demanded that Hernandez pay him certain money he believed he was due. Hernandez, who did not believe he owed any money at all, paid defendant part, but not all, of the money he wanted. For the next two weeks, defendant continued to make daily demands for the remainder of the money he sought. Finally, Hernandez told defendant he was not going to pay him any more money.

The next day, defendant knocked on Hernandez's door. When Hernandez opened the door, defendant pushed him inside with one hand, while stabbing him in the abdomen with the other hand. Defendant tried to stab Hernandez five or six more times before he fell to the floor.

Amanda Cobian, Hernandez's girlfriend, opened the bedroom door. Hernandez got up to try to close the door, so Cobian would not get hurt, but he was pushed from behind and landed face down. Hernandez was able to get up again, and he sustained additional, less severe cuts as defendant continued stabbing at him. As the

---

[1]     All subsequent statutory references are to the Penal Code unless otherwise specifically stated.

altercation continued, defendant pushed Hernandez, who hit the wall and then the floor. Defendant also pushed Cobian, who landed on the floor too, on her left arm. Cobian was screaming as she saw defendant swinging the knife at Hernandez. She reached for the telephone, but defendant hit her on the wrist.

Defendant had a "grin on his face." Hernandez said to him, "Stop. You don't want to do this. You don't want to wind up in jail. Stop." Defendant replied, "Die."

Hernandez and Cobian got up and somehow landed on the bed. Hernandez wrapped himself around Cobian "like a cocoon," to try to protect her. Then defendant stabbed Hernandez in the back. After that, defendant ran away and Cobian called the police.

Hernandez had surgery for a three-inch stab wound to his thoracoabdominal area and received interior sutures and six exterior staples. Cobian suffered a fractured radius.

### B. *Legal Proceedings:*

Defendant was charged with: (1) count one—the attempted murder of Hernandez (§§ 664, subd. (a), 187, subd. (a)); (2) count two—assault upon Hernandez with a knife (§ 245, subd. (a)(1)); (3) count three—assault upon Cobian with a knife (§ 245, subd. (a)(1)); and (4) count four—residential burglary (§§ 459, 460, subd. (a)). The information made several enhancement allegations and one prior conviction allegation.

The matter proceeded to trial. On August 8, 2013 at 11:58 a.m., the jury retired to deliberate. At 4:06 p.m. that day, the jury submitted a written question asking, ". . . If we do not reach a unanimous decision on Count 1, what is [the] final decision, or outcome[?]"

3

After a number of days off, the jury reassembled on August 13, 2013, and at 9:10 a.m. that day, the court provided supplemental instructions in response to the jury's question. The jury later requested to view the knife defendant used in the attack and also asked to have certain testimony read back. Both requests were accommodated. The jury reached its verdicts by 11:49 a.m.

The jury found defendant guilty on all four counts. The jury also found true all but one of the enhancement allegations. The jury found it not true that defendant committed the attempted murder of Hernandez willfully, deliberately and with premeditation.

Defendant was sentenced to a total of 14 years in state prison.[2] This included a four-year concurrent term on count four (burglary). Defendant appeals.

## II

## DISCUSSION

A. *Failure to Answer Jury's Question:*

The jury, as we recall, asked, "If we do not reach a unanimous decision on Count 1, what is [the] final decision, or outcome[?]" The court did not answer that question. It gave supplemental instructions instead.

---

[2] Defendant was sentenced as follows: (1) seven years on count one (§§ 664, subd. (a), 187); (2) one year, to be served consecutively to the count one term, on the section 12022, subdivision (b)(1) enhancement; (3) three years, also to be served consecutively to the count one term, on the section 12022.7, subdivision (a) enhancement; (4) three years on count two (§ 245, subd. (a)(1)), to be served concurrently with the count one term, sentence stayed (§ 654); (5) three years, to be served concurrently with the count two term, on the section 12022.7, subdivision (a) enhancement, sentence stayed (§ 654); (6) one year on count three (§ 245, subd. (a)(1)), also to be served consecutively to the count one term; (7) one year, to be served consecutively to the count three term, on the section 12022.7, subdivision (a) enhancement on count three; (8) four years on count four (§§ 459, 460, subd. (a)), to be served concurrently with the count one term; and (9) one year on the prior conviction under section 667.5, subdivision (b).

4

Defendant concedes that the court's failure to provide a direct answer to the jury's question was not error. Indeed, as our Supreme Court has held, "'[t]he trial court "is not required to 'educate the jury on the legal consequences of a possible deadlock.'"' [Citations.] Especially in a case like this—in which it was not clear that there *actually was* any deadlock—an instruction informing the jury of the consequence of a deadlock 'would have diminished the jurors' sense of duty to deliberate, and to be open to the ideas of fellow jurors. *The effect of a hung jury is irrelevant to the jury's deliberation of any issue before it.*' [Citation.]" (*People v. Hughes* (2002) 27 Cal.4th 287, 402.)

Defendant says the court nonetheless should have answered the jury's question in a particular way—by telling the jury it was not to concern itself with the consequences of any inability to arrive at a unanimous verdict. As defendant correctly observes, the Supreme Court in *People v. Virgil* (2011) 51 Cal.4th 1210, at page 1281, approved an instruction so given by the trial court. The *Virgil* court did not, however, state that it would have been error to fail to provide such a response. Defendant maintains that by giving supplemental instructions, without telling the jury not to be concerned about the consequences of a deadlock, the court coerced the jury into believing it was required to reach a verdict. We disagree.

*B. Section 1140:*

"The trial court's authority to give supplemental jury instructions to a deadlocked jury in a criminal case derives from Penal Code section 1140, which provides, 'Except as provided by law, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, . . . unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree.'" (*People v. Whaley* (2007) 152 Cal.App.4th 968, 979.)

5

"The determination, pursuant to section 1140, whether there is a "'reasonable probability'" of agreement, rests within the sound discretion of the trial court. [Citation.] Although the court must take care to exercise its power without coercing the jury into abdicating its independent judgment in favor of considerations of compromise and expediency [citation], the court may direct further deliberations upon its reasonable conclusion that such direction would be perceived "'as a means of enabling the jurors to enhance their understanding of the case rather than as mere pressure to reach a verdict on the basis of matters already discussed and considered." [Citation.]' [Citation.]" (*People v. Proctor* (1992) 4 Cal.4th 499, 539.)

Defendant points out that, in the case before us, the jury did not state that it *was* deadlocked. It merely asked what would happen if it did not reach a unanimous verdict. True enough, but the court reasonably could have interpreted the question as implying that the jury either viewed itself as already deadlocked or anticipated that it would be deadlocked. It was within the discretion of the trial court to offer supplemental instructions under the circumstances.

*C. Supplemental Jury Instructions:*

In response to the jury's inquiry, the court responded as follows:

"I got your message Thursday afternoon regarding what happens if you don't reach a unanimous decision on count 1. I take it you have had some discussion about that and have not yet reached an agreement on count 1. [¶] . . . So I'm going to give you some remarks and send you back to work, okay?

"It's been my experience [on] occasions when a jury initially reports that it's unable to reach a verdict, but ultimately is able to do so.

"I'm going to take a moment to instruct you as to the law and discuss how you may wish to approach your deliberations.

"Your goal as jurors should be to reach a fair and impartial verdict if you are able to do so based solely on the evidence presented and without regard for the consequences of your verdict regardless of how long it may take you to do so.

"Now, it's your duty to carefully consider, weigh and evaluate all the evidence presented throughout the trial, discuss your views regarding the evidence and listen and consider the views of your fellow jurors in your efforts to reach a verdict.

"In the course of your deliberations, you should not hesitate to reexamine your own views or to request your fellow jurors to reexamine theirs. You should not hesitate to change a view you once held if you become convinced it was incorrect or to suggest that other jurors consider changing their view[s] if you are convinced they are incorrect.

"Fair and effective jury deliberations require a frank and forthright exchange of views. Please keep an open mind and openly exchange your thoughts and ideas about the case. Remember, you are impartial judges of the facts, not advocates for one side or the other.

"Now, both the People and the defendant are entitled to the individual judgment of each juror. Each of you must decide the case for yourself, but you should only do so after a full and complete consideration of all the evidence with your fellow jurors.

"Again, it is your duty to deliberate with the goal of arriving at a verdict if you can do so.

"Now, you have complete discretion as to how you conduct your deliberations. You may conduct your deliberations whatever way you deem appropriate. There may be occasions where one approach to the deliberations has not proved productive and a different method may have benefit. You may consider and you may find it helpful to have different jurors take a turn leading the discussion or ask jurors with

7

opposing views to reverse roles and argue the other position in an effort to gain a better understanding of that point of view.

"Again, I'm not attempting to instruct you on how to conduct your deliberations, but merely suggesting methods you may find helpful.

"During your deliberations, you can consider only the evidence that was presented during the trial. You must not engage in speculation or conjecture on matters that were not presented or reasonably suggested by the evidence.

"You must determine what facts have been proved only by the evidence presented in the trial and not any other source. Again, you must take the law I state to you and in that way arrive at your verdict.

"Again, you cannot conduct your own research or investigation, consult other reference materials.

"You must not be influenced by pity for a defendant or prejudice against the defendant. You must not be biased against the defendant because he's been arrested, charged with a crime or brought to trial. You must not let bias, sympathy, passion, prejudice, or public opinion influence your decision in any way. You must reach your verdict without any consideration of penalty or punishment.

"Now, when you reach verdicts, have the foreperson date and sign the appropriate verdict forms. Place all other verdict forms in the envelope and notify the bailiff.

"Please keep in mind the recommendations contained in the written instructions that you were provided as well as the additional suggestions I have discussed with you today. I hope these additional comments and suggestions may be of some assistance to you.

"You are instructed to continue your deliberations at this time. If you have other conditions [*sic?*], concerns or requests or have any other matter you wish to

communicate to me, please put those in writing on the form and provide it to the bailiff. Have them dated and signed by your foreperson and then notify the bailiff.

"Again, if you request read back of any of the testimony during the trial, send me a note, let me know. We will have our reporter, Ms. Henningham come back and read that testimony to you. All right?

"Please return to the jury room to continue your deliberations."

*D.  Coercive Effect:*

Defendant concedes that what he describes as "almost identical instructions . . . were upheld as being non-coercive instructions, when they were given to a deadlocked jury in" *People v. Whaley*, *supra*, 152 Cal.App.4th 968 and *People v. Moore* (2002) 96 Cal.App.4th 1105. He argues those cases are distinguishable specifically because the juries in those cases were definitely deadlocked. (*People v. Whaley*, *supra*, 152 Cal.App.4th at pp. 973-974; *People v. Moore*, *supra*, 96 Cal.App.4th at p. 1118.) We are not persuaded that this distinction is relevant.

The courts in each of *People v. Whaley*, *supra*, 152 Cal.App.4th 968, at pages 980-985, and *People v. Moore*, *supra*, 96 Cal.App.4th 1105, at pages 1120-1121, considered our Supreme Court's analysis in *People v. Gainer* (1977) 19 Cal.3d 835. In *Gainer,* the court addressed the coercive effect of an "*Allen* charge"—a term derived from *Allen v. United States* (1896) 164 U.S. 492. (*People v. Gainer* (1977) 19 Cal.3d 835, 842.) The *Gainer* court held "it is error for a trial court to give an instruction which either (1) encourages jurors to consider the numerical division or preponderance of opinion of the jury in forming or reexamining their views on the issues before them; or (2) states or implies that if the jury fails to agree the case will necessarily be retried." (*Id.* at p. 852, fn. omitted.)

9

The courts in *People v. Whaley*, *supra*, 152 Cal.App.4th 968, at pages 982-983, and *People v. Moore*, *supra*, 96 Cal.App.4th 1105, at pages 1120-1121, both found that the instructions addressed therein did not run afoul of the proscriptions of *People v. Gainer*, *supra*, 19 Cal.3d 835. Just as the instructions given in *Whaley* and *Moore* did not violate the proscriptions of *Gainer,* the supplemental instructions given in the case before us also did not do so. The supplemental instructions neither urged the jurors to consider the numerical division of the jury in forming or reconsidering their views, nor indicated that if the jury failed to reach a unanimous verdict the case would necessarily be retried. (*People v. Gainer*, *supra*, 19 Cal.3d at p. 852.)

Of course, when the court issues supplemental jury instructions, it must do so "'without coercion of the jury, so as to avoid displacing the jury's independent judgment "in favor of considerations of compromise and expediency." [Citation.]' [Citations.] [¶] Directing further deliberations is proper where the trial court reasonably concludes that 'such direction would be perceived "'as a means of enabling the jurors to enhance their understanding of the case rather than as mere pressure to reach a verdict on the basis of matters already discussed and considered.' [Citation.]" [Citation].' [Citation.]" (*People v. Whaley*, *supra*, 152 Cal.App.4th at p. 980.)

Viewing the supplemental instructions as a whole, we see the emphasis was indeed on facilitating the jurors' increased understanding of the case. (*People v. Whaley*, *supra*, 152 Cal.App.4th at p. 980.) The court gave examples of how, through the employment of different methodologies, enhanced understanding could be achieved. We see no reason why the court could not reasonably have concluded that the supplemental instructions would be perceived as furthering the attainment of that objective. This is especially so where the jury had deliberated for only four hours before sending its question to the judge.

Defendant maintains that the supplemental instructions were coercive. He says "the instruction[s] did not really indicate that not reaching a verdict was an option." But the court is not obligated to tell the jury that not reaching a verdict is an option. (See *People v. Virgil*, *supra*, 51 Cal.4th at p. 1282.) Suggesting to a jury that it need not reach a verdict could "'diminish[] the jurors' sense of duty to deliberate, and to be open to the ideas of fellow jurors.'" (Cf. *People v. Hughes*, *supra*, 27 Cal.4th at p. 402.)

Defendant points to the portion of the supplemental instructions wherein the court stated: "Now, when you reach verdicts, have the foreperson date and sign the appropriate verdict forms. Place all other verdict forms in the envelope and notify the bailiff." He contends this instruction, especially when given in response to the question the jury asked, clearly implied that a unanimous verdict had to be reached. However, "'[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.' [Citation.]" (*People v. Castillo* (1997) 16 Cal.4th 1009, 1016.)

Here, the supplemental instructions also stated: "Your *goal* as jurors should be to reach a fair and impartial verdict *if you are able to do so* . . . without regard for the consequences of your verdict regardless of how long it may take you to do so." (Italics added.) They further stated, "it is your duty to deliberate with the *goal* of arriving at a verdict *if you can do so*." (Italics added.) "'"Jurors are presumed to be intelligent, capable of understanding instructions and applying them to the facts of the case."'" [Citations.]" (*People v. Carey* (2007) 41 Cal.4th 109, 130.) Here, the supplemental instructions, when read together, directed the jurors to reach a verdict *if they could*, and, assuming they could, to convey their verdict to the court through the foreperson and the bailiff.

The supplemental instructions were fully consistent with the original instructions in this regard. The supplemental instructions provided that the jurors should

keep in mind the original instructions. The original instructions similarly provided: "You should try to reach a verdict *if you can*." (Italics added.) Moreover, the supplemental instructions encouraged the jury to seek further clarification if desired. However, the jury gave no indication that it required additional instruction.

As defendant observes, *People v. Pride* (1992) 3 Cal.4th 195, at page 265, provides: "Any claim that the jury was pressured into reaching a verdict depends on the particular circumstances of the case. [Citations.]" The circumstances of this case do not show that the jury was pressured into reaching a verdict.

*E. Section 654:*

Defendant contends the court erred in failing to apply section 654 to stay the sentence on the count four burglary conviction. Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ."

As explained in *People v. Correa* (2012) 54 Cal.4th 331, "'In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct.'" (*Id.* at p. 337.) "'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses, but not for more than one.' [Citation.]" (*Id.* at p. 336.)

In the matter before us, the People's theory of the case was that defendant entered an inhabited dwelling with the intent to commit either attempted murder or aggravated assault. That being the case, the initial jury instructions provided that in order

12

to find defendant guilty of burglary, the People must have proven that he entered an inhabited house with the intent "to commit murder and/or an aggravated assault." So, in finding defendant guilty of burglary, the jury must have concluded his course of conduct was based on the single objective to commit murder and/or aggravated assault, as opposed to, for example, an objective to commit theft.

In support of his argument that the section 654 stay should have been applied, defendant cites numerous cases, including *People v. Price* (1991) 1 Cal.4th 324, *People v. Hester* (2000) 22 Cal.4th 290 and *People v. Radil* (1977) 76 Cal.App.3d 702. The *Price* court held "the trial court erred under section 654 in imposing punishment for both the murder of [a particular victim] and the burglary of her residence, both offenses being part of a single indivisible transaction." (*People v. Price*, *supra*, 1 Cal.4th at p. 492.) In *Hester*, the court observed, "'The admitted charging allegations stated that the burglarious entry was perpetrated with the intent to commit the felony assault.' Under section 654, therefore, the concurrent three-year sentence for the assault count should have been stayed. [Citation.]" (*People v. Hester*, *supra*, 22 Cal.4th at p. 294.) Similarly, the *Radil* court stated, "it was improper to sentence [the defendant] for both assault and burglary where the entry for purposes of assault constituted the requisite act for burglary. The entry for purposes of assault and the assault itself formed one continuous transaction. [Citation.] This constitutes a violation of Penal Code section 654." (*People v. Radil*, *supra*, 76 Cal.App.3d at p. 713.)

Defendant is correct on this point. The court erred in sentencing him on the count four burglary conviction in addition to the count one attempted murder conviction, and the count two and count three aggravated assault convictions, without staying the sentence on count four. The People concede the point and request that the sentence on the count four conviction be stayed. The parties' point is well taken.

13

III

DISPOSITION

The judgment is modified to stay the sentence on the count four burglary conviction.  In all other respects, the judgment is affirmed.  The matter is remanded to the trial court with directions to amend the abstract of judgment to reflect the stay and to send a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.


MOORE, ACTING P. J.

WE CONCUR:


ARONSON, J.


THOMPSON, J.

14