Filed 7/15/15  P. v. Smock CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C076711 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F07899) |
| v. | |
| WILLIAM SMOCK, | |
| Defendant and Appellant. | |

Defendant William Smock appeals from a judgment of conviction following a jury trial.  Together with codefendant Shanie Phillips, defendant was charged with two counts of second degree robbery (Pen. Code, § 211 (Counts One and Two))[1] related to an *Estes*[2] robbery of merchandise from Sears.  In association with Counts One and Two, defendant

---

[1] Undesignated statutory references are to the Penal Code in effect at the time of the charged offenses.

[2] *People v. Estes* (1983) 147 Cal.App.3d 23.

1

was separately charged with personal use of a deadly weapon, a knife (§ 12022, subd. (b)(1)). Additionally, defendant was separately charged with being a felon in possession of a tear gas weapon, pepper spray (§ 22810, subd. (a) (Count Three)). On the prosecution's motion at trial, Count One was dismissed as to both defendant and Phillips. Subsequently, a jury found defendant guilty of the remaining charges and found the deadly weapon allegation associated with Count Two to be true. However, the jury was unable to reach a unanimous verdict as to Phillips.

On appeal, defendant contends that the trial court prejudicially erred in instructing the jury with the "firecracker" instruction, CALCRIM No. 3551.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Trial Evidence

Richard Horn, a loss prevention agent for Sears in the Arden Fair Mall, observed defendant and Phillips on video surveillance in the men's department. Both had backpacks with them. Horn observed Phillips pick up a cell phone charger, which she removed from its package, and a black and gray men's beanie. Phillips and defendant then walked to the shoe department where Phillips discarded the charger packaging in a shoebox.

Defendant and Phillips left Sears without paying for the items. Angelo Lora-Gonzalez, another loss prevention agent, approached Phillips as she was leaving the store and identified himself as a loss prevention officer, showing his badge. He told her that he "needed to talk about the merchandise she had in her purse." He testified that Phillips denied taking anything, began "flailing about," and then started to take off. Lora-Gonzalez grabbed Phillips from behind to stop her; at that point, defendant came out of the store and attempted to intervene. Lora-Gonzalez again identified himself as a loss prevention officer and explained that he was detaining Phillips for shoplifting. A trainee loss prevention agent named Joe then tried to assist Lora-Gonzalez by getting in between

2

him and defendant. Lora-Gonzalez testified that he thought Joe had control of defendant, so he "partially released" Phillips while attempting to hold on to the merchandise. He asked Phillips to come back into the store and told her she was "[j]ust going to be ticketed," but she tried to run away again. Because Lora-Gonzalez maintained control over her purse, she was unable to get away. Defendant then intervened again, this time with a weapon, allowing Phillips to get away. Phillips dropped her purse as she ran toward the parking lot, and Lora-Gonzalez started to pursue her but stopped when he noticed a knife in defendant's hand. Lora-Gonzalez testified that he then called 911.[3]

Horn testified that he came out of the store and saw defendant and Phillips running through the parking lot. Horn picked up a purse that Phillips dropped. He testified that he believed but could not recall for certain that the stolen beanie was recovered from Phillips's purse. Then he and Lora-Gonzalez chased after them with another loss prevention officer, Toby Bonine, in Bonine's car. When they caught up with Phillips and defendant, the officers asked them to return the stolen property to Sears, advising that if they cooperated, Phillips would only get a ticket and would get her purse back. Phillips and defendant continued to flee, running across the freeway, heading towards Auburn Boulevard. Horn testified that about four police officers arrived in response to his 911 call, and they took Phillips and defendant into custody.

Officer Joe Thebeau testified that he was one of the arresting officers. He searched defendant's person and found a canister of pepper spray and a folded pocket knife in his pocket. Officer Thebeau also searched Phillips's backpack and found the stolen cell phone charger inside. The loss prevention officers identified Phillips and defendant, and they were placed under arrest.

---

[3] Horn testified that Lora-Gonzalez called 911 a few minutes later, while they were chasing defendant and Phillips in a car, so that they could give the police an accurate location. The 911 call was admitted into evidence and played for the jury.

The parties stipulated that, on August 13, 2013, defendant was convicted of felony attempted vehicle theft (§ 664; Veh. Code, § 10851).

**Verdict and Sentencing**

The jury found defendant guilty as charged in Counts Two (second degree robbery) and Three (felon in possession of a weapon), and it found the deadly weapon allegation associated with Count Two to be true. The jury was unable to return a unanimous verdict as to Phillips.

The trial court sentenced defendant to an aggregate term of four years eight months in state prison, calculated as follows: the midterm of three years on Count Two; a consecutive eight-month term (one-third the two-year midterm) on Count Three; and one year consecutive for the weapon enhancement.

## DISCUSSION

### I. Instructional Error

#### A. Background and Defendant's Contentions

The jury began its deliberations at 3:00 p.m. on May 1, 2014. On the third day of deliberations, May 5, at 11:30 a.m., the jury sent the trial court a note, which stated that it had reached a unanimous verdict regarding Count 3 (the felon in possession of a teargas weapon offense), but they were unable to reach a unanimous verdict as to Count Two, second degree robbery, for either defendant or Phillips. After conferring with counsel in chambers, the trial court discussed the note further on the record, outside of the jury's presence. The court expressed its intention to give the jury the CALCRIM No. 3551 instruction, known as the "firecracker instruction." Defendant's counsel objected, contending "[a]lthough this particular circuit [*sic*] has approved the giving of the firecracker, I still believe it invades the privacy of the jury in attempt to get into their deliberative process, and I believe it's a violation of both the State and Federal Constitution under the Fifth, Sixth, and Fourteenth Amendment as well as applicable section of the California Constitution . . . ."

4

The court responded: "The jury went out last Thursday. They deliberated the afternoon. They deliberated all day Friday and half a day today, and they've asked for exhibits. They asked for read back. They reviewed the 911 tape as well as the surveillance tape. So they're working hard. I'm not going to begrudge them that. Not like they're not being very conscientious about their duty as jurors. [¶] However, the first time a jury comes back and says they cannot reach a unanimous verdict, I think it's important to let them know different ways to go about deliberations to try and see if they can somehow come to a unanimous verdict. If they can't, they can't. I always like to give them at least one shot to do it. [¶] Cal Crim [No. 3551] is an approved instruction and reading the instruction doesn't get into the deliberative process but barely [*sic*] just gives them the opportunity to re-examine their views and see if they can possibly come up with a verdict. So that's what I intend to do."

Later the same day, the court advised the jury to continue its deliberations, instructing them with a modified version of CALCRIM No. 3551, as follows:

"I can't say that you have not been diligent in your deliberations in that you're working very, very hard. [¶] However, at this time, I'm not quite ready to let you go. [¶] Sometimes juries that have had difficulty reaching a verdict, are able to resume deliberations and successfully reach a verdict. Please consider some of the following suggestions: [¶] Do not hesitate to reexamine your own views. Fair and effective jury deliberations require a frank and forthright exchange of views. Each of you must decide the case for yourself and form your individual opinion after you have fully and completely considered all of the evidence with your fellow jurors. [¶] It is your duty as jurors to deliberate with the goal of reaching your verdict if you can do so without surrendering your individual judgment. Do not change your position just because it differs from that of other jurors or just because you or others want to reach a verdict. [¶] Both the People and the defendants are entitled to the individual judgment of each juror. It is up to you to decide how to conduct your deliberations, but you may want to consider

5

new approaches in order to get a fresh perspective. One approach may be to take the opposite side that you're arguing and argue the opposite side just to get a fresh perspective on things. [¶] Let me know whether I can do anything to help you further such as give additional instructions or clarify instructions that I [have] already given you. [¶] Please continue your deliberations at this time. . . . [¶] Okay. I'll send you back out [for] one more shot. Thank you."

After receiving the instruction at 2:09 p.m., the jury continued deliberations. At 4:00 p.m., the jury sent a note to the court indicating that it had reached unanimous verdicts as to defendant on Counts Two and Three but was still unable to reach a unanimous verdict as to Phillips on Count Two. The court then declared a mistrial on Count Two as to Phillips and received the jury's verdicts on Counts Two and Three as to defendant.

Defendant contends that the trial court prejudicially erred in instructing the jury with the "firecracker" instruction and in doing so, displaced the independent judgment of the jury. Defendant argues that the court effectively delivered an *Allen*-type instruction in this case. (See *Allen v. United States* (1896) 164 U.S. 492, 501-502 [41 L.Ed. 528, 531] (*Allen*).) He contends that because the jury returned its verdicts in less than two hours after the court gave the "firecracker" instruction, the instruction likely had a "coercive effect" on the holdout juror or jurors as to the verdict on Count Two. We disagree.

### B. Analysis

This court approved the so-called "firecracker" jury instruction to direct the jury to continue deliberations in an effort to reach a verdict in *People v. Moore* (2002) 96 Cal.App.4th 1105, 1118-1122 (*Moore*). The *Moore* court reasoned: "In [*Allen*], the [United States] Supreme Court approved a charge (the *Allen* charge) which encouraged the minority jurors to reexamine their views in light of the views expressed by the majority, noting that a jury should consider that the case must at some time be decided.

6

In *People v. Gainer* (1977) 19 Cal. 3d 835 [(*Gainer*)], however, our state high court disapproved of *Allen* in two respects. The *Gainer* court found 'the discriminatory admonition directed to minority jurors to rethink their position in light of the majority's views' was improper, inasmuch as, by counseling minority jurors to consider the majority view, whatever it might be, the instruction encouraged jurors to abandon a focus on the evidence as the basis of their verdict. (*Gainer*, at pp. 845, 848.) The second issue with which the *Gainer* court took issue was the direction the jury ' "should consider that the case must at some time be decided," ' noting such a statement was inaccurate because of the possibility the case might not be retried. (*Id*. at pp. 851-852.) In other words, it is improper to instruct the jury in language that suggests that if the jury fails to reach a verdict the case necessarily will be retried. (*Ibid*.)" (*Moore*, *supra*, 96 Cal.App.4th at pp. 1120-1121.)

However, in *Moore*, this court held that the "firecracker" instruction was distinguishable from the instruction given in *Gainer* because "[t]he trial court did *not* direct the jurors that 'the case must at some time be decided.' " (*Moore*, *supra*, 96 Cal.App.4th at p. 1121, italics added.) Instead, the trial court "instructed that the 'goal as jurors should be to reach a fair and impartial verdict *if you are able to do so* based solely on the evidence presented and without regard to the consequences of your verdict [or] regardless of how long it takes to do so.' " (*Ibid*.) The *Moore* court continued: "Nothing in the trial court's charge was designed to coerce the jury into returning a verdict. [Citation.] Instead, the charge simply reminded the jurors of their duty to attempt to reach an accommodation. [¶] Additionally, the court directed the jurors to consider carefully, weigh and evaluate all of the evidence presented at trial, to discuss their views, and to consider the views of their fellow jurors. Finally, the court instructed that it was their duty as jurors to deliberate with the goal of arriving at a verdict on the charge '*if you can do so without violence to your individual judgment*.' " (*Ibid*.) Several years later, in

*People v. Whaley* (2007) 152 Cal.App.4th 968, 979-985 (*Whaley*), the Sixth District Court of Appeal approved of the same instruction, citing *Moore.*

On appeal, defendant did not bother to cite *Moore* or *Whaley*, or otherwise address the reasoning in those two cases. Instead, he cites several Ninth Circuit cases, most of which predate this court's opinion in *Moore* and, in any event, are not binding on this court. In doing so, defendant conflates *Allen* or the " 'dynamite' instruction"[4] with the modified version of CALCRIM No. 3551 given to the jury in this case, contending that the instruction was impermissibly coercive. Defendant's speculative and ill-supported argument is belied by the record. The court's instruction, like the instruction in *Moore*, specifically advised the jurors to "fully and completely consider[] all of the evidence with your fellow jurors," to "decide the case for yourself," and to arrive at a verdict only "if you can do so without surrendering your individual judgment." As opposed to the more coercive instruction at issue in *Gainer*, the "firecracker" instruction "did not implicitly approve a movement towards unanimity or otherwise send a message that the holdout juror [or jurors] was to cooperate with the majority. . . . [W]hile the trial court urged the jurors to continue deliberating, the court also emphasized that the jurors should arrive at a verdict *only* if they could do so without violence to their individual judgment." (*Whaley*, *supra*, 152 Cal.App.4th at p. 984, italics added.)

Here, as in *Moore* and *Whaley*, the instruction was not coercive. It appropriately encouraged jurors to use different approaches, such as arguing the opposite position, to "get a fresh perspective." However, it did not single out holdout jurors, instruct the jurors

---

**4** In *Gainer*, our high court disapproved of so-called "dynamite" instructions: "[I]t is error for a trial court to give an instruction which either (1) encourages jurors to consider the numerical division or preponderance of opinion of the jury in forming or reexamining their views on the issues before them; or (2) states or implies that if the jury fails to agree the case will necessarily be retried." (*Gainer*, *supra*, 19 Cal.3d at p. 852.) The "firecracker" instruction at issue here, like the instruction at issue in *Moore*, does neither.

to reconsider their positions in light of the majority opinion, or indicate that the case would need to be retried if they failed to reach a verdict. (See *Gainer*, *supra*, 19 Cal.3d at p. 852.) When the jurors resumed deliberations, they presumably followed these instructions because it took almost another two hours to reach a verdict as to defendant and the jury still could not reach a verdict as to Phillips. In light of these circumstances, it is not reasonably likely that the jury took the court's instruction to mean that they were required to reach a unanimous verdict or that jurors were otherwise coerced into finding defendant guilty. (See *People v. Jablonski* (2006) 37 Cal.4th 774, 831 ["In assessing a claim of instructional error, 'we must view a challenged portion "in the context of the instructions as a whole and the trial record" to determine " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." ' [Citation.]"].) Moreover, in light of the fact that the jury had spent a little over a day and a half deliberating at the time it received the "firecracker" instruction, we do not find the additional two-hour deliberation overly-hasty or indicative of coercion. Accordingly, we conclude that the trial court did not err in giving the jury the "firecracker" instruction.

## DISPOSITION

The judgment is affirmed.


                                                MURRAY        , J.


We concur:


     BLEASE       , Acting P. J.


     NICHOLSON   , J.